712 A.2d 1274

ELIZABETH SWEENEY, PLAINTIFF–RESPONDENT, v. WILLIAM E. HONACHEFSKY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted June 22, 1998—Decided July 2, 1998.

Before Judges PRESSLER and KING.

*William E. Honachefsky*, appellant, filed a pro se brief.

Respondent did not file a brief.

PER CURIAM.

Defendant William E. Honachefsky, against whom a final domestic violence restraining order was entered on March 6, 1997, on the complaint of plaintiff, Elizabeth Sweeney, appeals from an order of the Chancery Division, Family Part, denying his motion for dissolution thereof pursuant to the good-cause provision of *N.J.S.A.* 2C:25–29d. We reverse.

According to this record, the parties had become friends in December 1996 and started dating in January 1997. They enjoyed an affectionate relationship until the last week or so of February 1997, when plaintiff decided to end it. The first untoward event apparently occurred on February 17, 1997, when the parties were having dinner in a restaurant after having exchanged Valentine's Day gifts. As we understand the record, defendant said something upsetting to plaintiff regarding fidelity and plaintiff responded that she wished to break off the relationship, then

left the restaurant and drove herself home. She lived with a roommate, Diane Jung. The parties never lived together during their three or four-week romance. In any event, the next morning plaintiff discovered her purse was missing and telephoned defendant to ask him if he had seen it. According to him, he returned to the restaurant to look for it and it indeed was there. He opened it to place a note and a rose inside and then returned it to her. Although plaintiff apparently later accused defendant of having taken her purse, she did admit on cross-examination at the hearing on the final restraining order that it was indeed possible that she had left it at the restaurant.

Over the course of the next week, defendant apparently left notes in plaintiff's car, spoke with her on the telephone, and came to her home to talk to her. She understood that his interest was in resuming the relationship. On one occasion, he telephoned her as late as 11 p.m., and she told him not to call her again. Plaintiff conceded, however, that there was nothing offensive to her in the content of defendant's communication to her, but that she was "harassed in being that I had asked him to leave me alone and he proceeded to call me on several occasions," conduct that she categorized as "inconvenient."

The event precipitating plaintiff's complaint of domestic violence to the police occurred on February 24, 1997, it having been Jung rather than plaintiff who summoned them. On that evening, defendant went to plaintiff's house, and the two talked for about twenty to twenty-five minutes. Plaintiff became upset and finally told him that she was "fed up" and drove away. At some point during her drive, she saw defendant's truck and assumed he was following her, and immediately returned home. She admitted, however, on cross-examination that she did not really know whether having seen him was purely fortuitous or not, and her only observation of him was while he was stopped at a red light. At any rate, defendant telephoned her after she returned home and then came to her house. At that point Jung called the police because plaintiff was distressed. Jung claimed that defendant was

"screaming" on the doorstep. However, he left before their arrival, and this domestic violence complaint ensued.

The trial judge concluded, following the hearing, that defendant had committed acts of harassment against plaintiff by placing the note and rose in her purse and by pursuing her after she announced her intention to break up with him. The final restraining order enjoined him from having any communication with both plaintiff and Jung and required him to enroll in an anger management course. It also prohibited his possession of a firearm or buck knife.

Defendant aspires to be a federal law enforcement officer and, obviously, cannot attempt to do so while the restraining order stands. Accordingly, he made this motion for its dissolution in June 1997 pursuant to *N.J.S.A.* 2C:25–29d, which provides that:

> Upon good cause shown, any final order may be dissolved or modified upon application to the Family Part of the Chancery Division of the Superior Court, but only if the judge who dissolves or modifies the order is the same judge who entered the order, or has available a complete record of the hearing or hearings on which the order was based.

By the time of the hearing in August 1997, defendant had successfully completed the anger management course.

Plaintiff, who had been noticed of the hearing on the motion, appeared, but anomalously, the judge announced her decision denying the motion on the papers before taking plaintiff's testimony. Plaintiff then testified that she wished the restraining order dissolved for a number of reasons, including her feeling that she did not need it any more, her reassurance on account of defendant's completion of the anger management course, her desire to be done with defendant entirely and to get on with her life, and her desire not to be involved with any further court proceedings. She apparently had by then a new romantic interest. It is also significant to note that the parties reside at least twenty-six miles apart and that the only contact between them and between defendant and Jung after the order was entered came about as the result of plaintiff and Jung having gone to a nightclub where they knew defendant was employed as a bouncer although they knew

they should not have done so. Since there had been no contact at all initiated by defendant there had also, obviously, been no contempt proceeding. Insofar as we are able to understand the record, the motion was again denied at the conclusion of plaintiff's testimony on the ground that the judge considered as ambiguous plaintiff's expressed desire to have the restraining order dissolved.

In *Carfagno v. Carfagno*, 288 *N.J.Super.* 424, 672 *A.2d* 751 (Ch.Div.1995), the Family Part identified a number of factors to be considered by the court in determining whether the undefined good-cause standard of the statute has been met. These factors include the consent of the victim to the dissolution, the victim's continued fear of defendant, the nature of the parties' present relationship, whether there have been any contempt convictions against defendant, whether defendant has been involved in alcohol or drug use or other violent acts, whether defendant has engaged in counselling, defendant's age and health, the victim's good faith in opposing the dissolution, and whether restraining orders have been entered in any other jurisdiction. *Id.* at 435, 672 *A.2d* 751.

We think it plain that all of these factors weigh in defendant's favor. We consider them in the light of our perception that the conduct here involved was, in terms of domestic violence, marginal at best. There was never the slightest suggestion of physical or verbal abuse, defendant never made any threats of any kind to plaintiff or her roommate, and he did not use offensive language. This was a brief dating relationship, which plaintiff broke off and defendant hoped to revive during the course of exactly one week by telephone calls and visits in which plaintiff participated. Perhaps it would have been wiser for him not to have tried to effect a rapprochement with plaintiff, but although his continued attentions may have been unwelcome, it is difficult to fit them comfortably into the rubric of domestic violence, which, when harassment is the gravamen, requires a purpose to achieve that result or a course of alarming conduct. *See, e.g., N.B. v. T.B.,* 297 *N.J.Super.* 35, 41–42, 687 *A.2d* 766 (App.Div.1997); *Corrente v. Corrente,* 281 *N.J.Super.* 243, 657 *A.2d* 440 (App.Div.1995);

*Peranio v. Peranio,* 280 *N.J.Super.* 47, 654 *A.*2d 495 (App.Div. 1995); *Murray v. Murray,* 267 *N.J.Super.* 406, 631 *A.*2d 984 (App.Div.1993). *Cf. Cesare v. Cesare,* 154 *N.J.* 394, 713 *A.*2d 390 (1998); *State v. Hoffman,* 149 *N.J.* 564, 695 *A.*2d 236 (1997). Surely the law must have some tolerance for a disappointed suitor trying to repair a romantic relationship when his conduct is not violent or abusive or threatening but merely importuning.

As to the specific factors enumerated by *Carfagno,* we are satisfied that the import of plaintiff's testimony at the hearing on the motion for dissolution was a consent to dissolution. Certainly, she did not testify to any continuing fear of him. As to the relationship between the parties, there is none. Both have gone on to other interests. There is nothing at all in this brief romance to suggest any prospect of the parties ever having anything to do with each other again or desiring to. Without referring specifically to any of the other factors, we think it plain that none weighs against the relief sought but rather that all of them support it.

While we appreciate the trial judge's expressed solicitude for plaintiff, we see nothing in this record to suggest that she will be at any discernible risk if the motion were granted. Its denial, however, severely prejudices defendant. That, in our view, is what good cause is all about.

The order appealed from is reversed, and we remand for entry of an order dissolving the domestic violence restraining order of March 6, 1997.