RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3421-15T3

J.R.,

 Plaintiff-Appellant,

v.

Y.L.,

 Defendant-Respondent.

____________________________

 Submitted August 30, 2017 – Decided November 2, 2017

 Before Judges Alvarez and Gooden Brown.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Family Part,
 Monmouth County, Docket No. FV-13-0683-13.

 J.R., appellant pro se.

 Respondent has not filed a brief.

PER CURIAM

 Plaintiff requests our review of a March 2, 2016 Family Part

order, which denied his application to reinstate a final

restraining order (FRO) entered against defendant on his behalf,

pursuant to the Prevention of Domestic Violence Act of 1991 (PDVA),
N.J.S.A. 2C:25-17 to -35. Previously, we reversed the dissolution

of the FRO and remanded for further proceedings. Based on our

review of the record in the prior appeal, we noted "[t]he

certification submitted by defendant in support of her motion to

dissolve the FRO was inadequate to explain either the parties'

history relative to the FRO, or her reasons for seeking its

dissolution[,]" and "[w]e s[aw] no sworn testimony from plaintiff

explaining his reasons for objecting to the dismissal of the FRO."

J.R. v. Y.R., No. A-2464-14T3 (App. Div. Feb. 9, 2016) (slip op.

at 4).

 We determined that "[a]lthough the judge in his written

statement of reasons cited to Carfagno [v. Carfagno, 288 N.J.

Super. 424 (Ch. Div. 1995)] as a touchstone, his discussion was

minimal." J.R. v. Y.R., No. A-2464-14T3 (App. Div. Feb. 9, 2016)

(slip op. at 5). We concluded "[t]he judge lacked enough

information to even make any findings of fact, much less to draw

his somewhat subjective conclusions from the facts, such as that

plaintiff was not in fear, or that neither party was acting in

good faith." Ibid. "Because of the scant record," we remanded

"for further proceedings so that the issues [could] be fully

developed in compliance with due process and Rule 1:7-4(a)." J.R.

v. Y.R., No. A-2464-14T3 (App. Div. Feb. 9, 2016) (slip op. at 5).

On remand, the trial court conducted a plenary hearing and entered

 2 A-3421-15T3
an order denying reinstatement of the FRO. For the reasons that

follow, we affirm.

 At the remand hearing before the same judge,1 plaintiff

testified that he and defendant were unmarried but lived together

in a romantic relationship for four years. They had a child who

was five years old at the time of the hearing. After plaintiff

moved out in February 2012, the parties shared joint legal and

physical custody of their daughter based on an order issued in

ongoing domestic relations proceedings under a non-dissolution or

FD docket.2 Pursuant to that order, they followed a parenting

time schedule with weekly custody exchanges occurring at the

Monmouth County Courthouse, despite the fact that plaintiff

resided in Elizabeth and defendant resided in Toms River.

 Plaintiff testified about domestic violence incidents that

occurred during their cohabitation and continued after he moved

out. Specifically, plaintiff testified that defendant "stalked"

 1
 We note that although the judge characterized the remand
proceeding as "essentially, a motion to reinstate the restraining
order that [plaintiff] formerly had," because we reversed the
judge's order dissolving the FRO, procedurally, the FRO was
reinstated by virtue of our reversal, and the hearing was actually
a motion to dissolve the FRO ab initio.
 2
 The non-dissolution or FD docket provides a mechanism for
parents not married to each other to seek custody, parenting time,
paternity, and child support. R.K. v. D.L., 434 N.J. Super. 113,
131 (App. Div. 2014).

 3 A-3421-15T3
him and "assaulted" him on two occasions. The second assault

occurred in the police station during a custody exchange and

ultimately led to the issuance of the FRO on November 9, 2012, by

a different judge. Plaintiff explained that the FRO hearing was

adjourned twice at defendant's request. When defendant failed to

appear on the rescheduled date, the FRO was issued in her absence.

Over the next two years, defendant filed two motions for

reconsideration, both of which were denied. According to

plaintiff, defendant provided conflicting testimony during the

motions for reconsideration and accused him of committing acts of

domestic violence against her. Defendant also filed four motions

to vacate the FRO with four different judges, until the FRO was

eventually vacated on December 19, 2014, prompting plaintiff's

first appeal.

 According to plaintiff, after the FRO was vacated, there were

two incidents that occurred in November and December 2015, during

which defendant "showed up at [his] residence twice,

unannounced[.]" Although plaintiff initially testified that

defendant had "no reason to be there[,]" he later explained that

"[s]he actually dropped off [their] daughter, unannounced, . . .

off of the schedule," and at the wrong drop-off location. Although

"there was no contact" between the parties on either occasion,

plaintiff explained he still did not "feel comfortable" with "her

 4 A-3421-15T3
just popping up to [his] residence[,]" given their history.

Plaintiff confirmed that since December 2015, their only contact

has been e-mail exchanges regarding their daughter.

 Plaintiff also testified that defendant suffers from "bipolar

disorder, and she frequently goes off her psychotropic

medications[.]" According to plaintiff, "given the history," "her

propensities for going off of her medication," and "the ongoing

custody litigation," he needed the restraining order for his

protection because he is afraid that if "[they] get a result from

the custody litigation that's not in her favor[,] she's going to

launch another attack against [him]." Otherwise, "if [they] didn't

have a daughter together [he] would be fine living out of state,

and vacating the restraining order[.]"

 Defendant testified there was "no need for a restraining

order" because "[plaintiff] is not afraid" of her. She believed

"everything was fine." She admitted dropping their daughter off

at plaintiff's house but explained she was in Elizabeth caring for

her sick mother. She denied that the drop-off was unannounced

because she would normally send an e-mail, but sometimes the e-

mails would "bounce back." She testified that since December

2014, when the FRO was vacated, they had been exchanging custody

"without any supervision" at locations other than the courthouse,

such as the Home Depot in Toms River and the police station in

 5 A-3421-15T3
Elizabeth. In addition, they had been discussing everything

regarding their daughter "over e-mails."

 Defendant testified that plaintiff has abused her "mentally,

physically, [and] emotionally," and has "also abused [her]

children[.]" However, she "put that away to the side," for the

sake of their daughter. Defendant got married, had a baby, has

undergone domestic violence counseling for three years, attends

her appointments "to meet the criteria" for continued services,

and has "moved on" with her life. Defendant explained, "[t]his

is not about him fearing me, this is really about custody[.]"

Defendant accused plaintiff of using the restraining order "to dig

[her] in[to] a hole so that way he can have a higher hand with a

restraining order," but "restraining orders should be for people

whose rights have been violated."

 At the conclusion of the hearing, the judge applied the

Carfagno factors and vacated the FRO. In analyzing the factors,

the judge found no evidence of contempt convictions resulting from

any FRO violations, no evidence of drug or alcohol abuse by

defendant, and no evidence of violent acts against other persons

or orders of protection entered by other jurisdictions. The judge

acknowledged defendant's mental health issues, as well as the fact

that she has engaged in counseling. In evaluating the current

nature of the relationship between the parties, the judge observed:

 6 A-3421-15T3
 The parties seem as if . . . they have
 been cooperating . . . since this [c]ourt's
 involvement in 2014, where they appeared
 before me on a number of occasions, and
 they’ve . . . appeared before . . . a lot of
 other judges earlier . . . on similar type
 matters, that the pickup and drop off,
 essentially, has been working. . . .

 . . . They are communicating with regard to
 the child by e-mail as to the child’s . . .
 activities . . . . [I]t seems as if [there is]
 ultimately going to be a custody contest
 . . . .

 To me, it seems as if the parties, since
 this [c]ourt entered the order dismissing the
 . . . restraining order, back on December
 19[], 2014, the parties have been existing
 . . . . I have not been presented with any
 police reports indicating that one side or the
 other was involved in an assault. . . . [T]here
 w[ere] two occasions that [plaintiff]
 testified . . . that [defendant] came to [his]
 house to drop off the child. That probably
 was . . . not a good idea as an alternative
 as to where the pickup and drop[-]off should
 be. If [it is] agreed upon at a police
 station, or . . . the [H]ome [D]epot where the
 . . . child[,] who is now five[,] can get out
 of a car and get into another car, I don’t
 think . . . [that is] an issue, but going to
 someone's house when there was a restraining
 order for a number of years can be alarming.
 I would admit that. So, . . . that should not
 be done, because that will just result . . .
 in . . . the police being called again.

 The judge focused on "the good faith of the victim" in

opposing the dissolution and "in requesting, again, for the [c]ourt

to reinstate the . . . [FRO.]" The judge also carefully

scrutinized the testimony regarding "the victim's fear of the

 7 A-3421-15T3
defendant[.]" The judge noted that "the primary factor that

[plaintiff] is relying upon is that he is in fear of [defendant],

and that he believes that if the restraining order is not entered

that he would be subject to, essentially, violence as he had

earlier when the restraining order was entered[.]" However, the

judge concluded:

 I . . . really believe that the real issue
 here is more FD issues. [They are] custody
 issues, and if the parties are going to go
 through a custody trial . . . then a court
 . . . will make a decision. Clearly there
 will still be parenting time. [That is] never
 going to change. [They have] been having
 parenting time since the child was born, and
 that part will always be in effect. But I do
 not believe that . . . [plaintiff] has a good
 faith based fear of this defendant. I think
 that he is trying to use this as an upper hand
 in a custody battle, and I will not reinstate
 the restraining order.

 On appeal, plaintiff argues the judge "erred by converting

the appellate remand into a motion for reconsideration by

[p]laintiff[,]" which "put an enormous and unfair burden on

[p]laintiff[.]" Plaintiff also argues the judge "failed to make

any factual findings to support [his] conclusions[,]" made

"unsupported conclusions with no factual basis[,]" and "failed to

make any factual findings or assessment of credibility of the

parties['] testimony, to determine what credible testimony, if

any, should add weight to the factors outlined in Carfagno."

 8 A-3421-15T3
 We do not disturb a trial court's factual findings unless

unsupported by "adequate, substantial[,] and credible evidence,"

Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474,

484 (1974), and we pay particular deference to the Family Part's

expertise. Cesare v. Cesare, 154 N.J. 394, 412-13 (1998).

Deference is also appropriate "when the evidence is largely

testimonial and involves questions of credibility." Id. at 411

(quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117

(1997)). On the other hand, the appropriate standard of review

for conclusions of law is de novo. S.D. v. M.J.R., 415 N.J. Super.

417, 430 (App. Div. 2010) (citing Manalapan Realty, L.P. v. Twp.

Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

 "[T]he Legislature did not intend that every [FRO] issued

pursuant to the [PDVA] be forever etched in judicial stone." A.B.

v. L.M., 289 N.J. Super. 125, 128 (App. Div. 1996). Pursuant to

the PDVA, a court may vacate an FRO upon good cause shown. N.J.S.A.

2C:25-29(d). "The linchpin in any motion addressed to dismissal

of a [FRO] should be whether there have been substantial changed

circumstances since its entry that constitute good cause for

consideration of dismissal." Kanaszka v. Kunen, 313 N.J. Super.

600, 609 (App. Div. 1998). "With protection of the victim the

primary objective, the court must carefully scrutinize the record

 9 A-3421-15T3
and carefully consider the totality of the circumstances before

removing the protective shield." Id. at 605.

 In Kanaszka, supra, 313 N.J. Super. at 607, we adopted

Carfagno's non-exclusive list of eleven factors a trial court

should consider when determining whether good cause to dissolve

an FRO has been shown. Those factors, which are to be weighed

"qualitatively, and not quantitatively," Carfagno, supra, 288 N.J.

Super. at 442, include:

 (1) whether the victim consented to lift the
 restraining order; (2) whether the victim
 fears the defendant; (3) the nature of the
 relationship between the parties today; (4)
 the number of times that the defendant has
 been convicted of contempt for violating the
 order; (5) whether the defendant has a
 continuing involvement with drug or alcohol
 abuse; (6) whether the defendant has been
 involved in other violent acts with other
 persons; (7) whether the defendant has engaged
 in counseling; (8) the age and health of the
 defendant; (9) whether the victim is acting
 in good faith when opposing the defendant's
 request; (10) whether another jurisdiction has
 entered a restraining order protecting the
 victim from the defendant; and (11) other
 factors deemed relevant by the court.

 [Id. at 435.]

Additionally, a court must consider whether the continuation of

the FRO "prejudices defendant" because that "is what good cause

is all about." Sweeney v. Honachefsky, 313 N.J. Super. 443, 448

(App. Div. 1998).

 10 A-3421-15T3
 When considering whether the victim fears the defendant, the

court must look at objective fear, not subjective fear. Carfagno,

supra, 288 N.J. Super. at 437-38. "Objective fear is that fear

which a reasonable victim similarly situated would have under the

circumstances." Id. at 437. The standard is objective fear

because "[t]he duration of an injunctive order should be no longer

than is reasonably required to protect the interest of the injured

party." Id. at 438 (emphasis omitted) (quoting Trans Am. Trucking

Serv., Inc. v. Ruane, 273 N.J. Super. 130, 133 (App. Div. 1994)).

If the court applied a subjective standard, the scope of the

injunction might be broader than reasonably necessary to protect

the victim and would unnecessarily infringe on the defendant's

rights. Ibid.

 Additionally, the court must "fully explore[]" the "previous

history of domestic violence between the parties . . . to

understand the totality of the circumstances . . . and to fully

evaluate the reasonableness of the victim's continued fear of the

perpetrator." Kanaszka, supra, 313 N.J. Super. at 607. This

exploration can include "incidents that were not testified to at

the final hearing." Ibid.

 Here, reviewing the judge's findings with the deference

accorded to findings made by a Family Part judge, we find no reason

to interfere with the decision. The judge was satisfied that

 11 A-3421-15T3
defendant demonstrated substantial changed circumstances since the

entry of the FRO, constituting good cause for its dismissal.

Indeed, substantial change was evident from defendant's testimony

that she had undergone counseling and "moved on" with her life.

In addition, the FRO prejudiced defendant in the parties' ongoing

custody litigation. See Sweeney, supra, 313 N.J. Super. at 446-

47. The judge also determined that plaintiff's fear of defendant

was not objectively reasonable. While not explicit, we can

certainly glean the judge’s credibility assessment of plaintiff’s

testimony regarding his fear from the following statement: "I do

not believe that . . . [plaintiff] has a good faith based fear of

this defendant. I think that he is trying to use this as an upper

hand in a custody battle[.]" Contrary to plaintiff's argument,

the judge's findings are supported by adequate, substantial, and

credible evidence in the record.

 Plaintiff also argues for the first time on appeal that the

judge failed to provide proper notice of the hearing by including

the "wrong case caption and docket number" in the notice to appear.

However, we "decline to consider questions or issues not properly

presented to the trial court when an opportunity for such a

presentation is available unless the questions so raised on appeal

go to the jurisdiction of the trial court or concern matters of

great public interest." Zaman v. Felton, 219 N.J. 199, 226-27

 12 A-3421-15T3
(2014) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)). Neither

exception is implicated here.

 Affirmed.

 13 A-3421-15T3