# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3372-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

M.F.L.,[1]

     Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

**May 30, 2024**

APPELLATE DIVISION

Submitted May 1, 2024 – Decided May 30, 2024

Before Judges Currier, Firko, and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Indictment No. 18-02-0068.

M.F.L., appellant pro se.

Renée M. Robeson, Hunterdon County Prosecutor, attorney for respondent (Joseph B. Paravecchia, First Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

FIRKO, J.A.D.

---

[1] We identify defendant by initials to protect the identities of the victims of sexual assault and the family.  R. 1:38-3(c)(12).

Defendant M.F.L., who is self-represented, appeals from a March 23, 2022 Law Division order denying his motion to modify his judgment of conviction (JOC) and Sex Offender Restraining Order (SORO) issued pursuant to Nicole's Law, N.J.S.A. 2C:14-2 and 2C:44-8. The SORO prohibited defendant from having any contact with the two victims, his now ex-wife, A.M., and their two minor biological children. The motion judge, who was also the sentencing judge, applied the framework established in Carfagno v. Carfagno, 288 N.J. Super. 424 (Ch. Div. 1995), in denying defendant's motion.

After reviewing the record in light of the governing principles of law, we conclude it is appropriate to use the Carfagno analysis when considering an application to modify or vacate a SORO. Because defendant did not present the judge with sufficient information to properly undertake the analysis, the motion judge correctly denied the application. We affirm.

I.

On November 2, 2018, defendant was sentenced to a seven-year term of imprisonment, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, following his guilty plea to two counts of second-degree sexual assault in violation of N.J.S.A. 2C:14-2(b).[2] The victims were defendant's two step-

---

[2] According to the New Jersey Department of Correction's website, defendant was released on December 23, 2023, after the filing of the notice of appeal.

daughters—now adults—who resided with defendant, A.M., and their two minor biological children, the victims' half-siblings. The record does not reflect the biological children's dates of birth or ages.

At the sentencing hearing, the trial court issued a SORO, which provided:

> [D]efendant is permanently banned from the residences, schools, and places of employment of the victims, as well as those of his [ex-]wife and biological children. He is further prohibited from having any form of contact with the victims or others identified in the order, making or causing anyone else to make harassing communications to the victims or others identified in the order.

On August 18, 2021, while still incarcerated, defendant filed a motion to modify the JOC and the SORO to allow him to have contact and visitation with his two minor biological children through a third party. In support of his motion, defendant argued there were changed circumstances warranting relief because the victims were now adults and no longer resided with his two biological children. Defendant also argued that Nicole's Law does not require an individual charged or convicted of a sex offense to surrender their parental rights.

In a letter, the prosecutor, through its office of Witness Advocacy Coordinator, contacted A.M. regarding her position on defendant's application. According to the Coordinator, A.M. expressed her concern for the minor

children's safety in light of defendant's "criminal conduct and victimization of his juvenile step-children" and indicated they did not want to "see or communicate with defendant at this time." The State did not present an affidavit or certification from A.M. or the children.

The State argued that the fact the victims were now adults and no longer resided with defendant's two biological children did not "automatically render any of the active orders of protection inapplicable or invalid." The State also asserted that based upon the harm inflicted upon the victims inside the former family residence and the "trauma" endured by the family, defendant's application should be denied.

On March 23, 2022, the motion judge issued an order and written decision denying defendant's motion. The motion judge found that based on similarities between a SORO and a final restraining order (FRO) issued under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, the framework established in Carfagno was appropriate to use when determining whether a SORO should be vacated or modified.

In Carfagno, the Chancery Division set forth the following factors for a court to consider when deciding whether to vacate or modify an FRO:

> (1) whether the victim consented to lift the restraining order; (2) whether the victim fears the defendant; (3) the nature of the relationship between the parties today; (4) the number of times that the defendant has

been convicted of contempt for violating the order; (5) whether the defendant has a continuing involvement with drug or alcohol abuse; (6) whether the defendant has been involved in other violent acts with other persons; (7) whether the defendant has engaged in counseling; (8) the age and health of the defendant; (9) whether the victim is acting in good faith when opposing the defendant's request; (10) whether another jurisdiction has entered a restraining order protecting the victim from the defendant; and (11) other factors deemed relevant by the court.

[288 N.J. Super. at 435.]

In considering factor one, the motion judge found the biological children did not consent to modifying the SORO. The judge gave great weight to the factor. However, the Carfagno factor refers to victims. Here, defendant does not seek to modify the SORO as to the victims. As stated, there was no certification or testimony, or any other correspondence submitted by A.M. or the children. Without any direct testimony from A.M. and the biological children, the motion judge could not properly assess this factor, much less give it great weight.

Similarly, in considering the second factor—whether the victim feared defendant—the motion judge could not properly assess this element without further information. The biological children are not the victims of defendant's convictions. As the motion judge stated it is "unclear whether the biological children themselves are afraid of defendant."

5

Reviewing the relationship of the parties today (factor three), the motion judge noted there was insufficient information of "changed circumstances" to determine whether allowing defendant to contact his biological children would affect the victims. Again, defendant does not seek to modify the SORO as to the victims of these crimes—defendant's now-adult step-daughters. In addition, the motion judge did not have any facts before her as to the relationship between the victims and the step-daughters.

As to violations of the SORO (factor four), the motion judge noted defendant had been incarcerated since the SORO issued, and there was "insufficient information as to any attempts to contact his biological children." As the prosecutor did not allege any violations of the SORO, the motion judge erred in not finding this factor in favor of defendant.

In terms of defendant's drug and alcohol abuse (factor five), the motion judge referenced defendant's presentence report, which indicated that he had used "alcohol, marijuana, and ecstasy," but noted there was no information about defendant's current substance usage or any treatment he underwent while incarcerated. The motion judge next considered whether defendant had been involved in violent acts with others (factor six). The judge emphasized that defendant was convicted of sexually assaulting his then two minor step-daughters, and his behavior was "repetitive and compulsive," weighing against

6

modifying the SORO. However, we note again that defendant only sought to modify the SORO as to his children, not the victims of his convictions.

The motion judge considered whether defendant has engaged in counseling under factor seven, noting he was found to be a repetitive and compulsive sexual offender "amenable to treatment." However, again the motion judge could not properly assess this factor as she did not have any information regarding defendant's conduct while in prison or whether he engaged in recommended treatment.

The next factor considered was the age and health of defendant (factor eight). The motion judge found defendant is "middle-aged and has health concerns," but there is no indication "that he is so infirm that he can no longer pose a threat." Regarding factor nine, whether the victims are acting in good faith in opposing defendant's motion, the motion judge stated there was no indication that any of the parties were not acting in good faith.

The motion judge was unaware of any other jurisdiction issuing a restraining order against defendant (factor ten). The motion judge explained that defendant and A.M. have divorced, but the judge was not provided with any information or orders from the Family Part dissolution matter (factor eleven). Therefore, the motion judge found it was "impossible . . . to determine how a modification of this [SORO] would actually impact other

orders." The motion judge denied the motion to modify the JOC and SORO.

This appeal followed.

Defendant raises the following contentions for our consideration:

LEGAL POINT 1

THE TRIAL COURT ERRED IN PLACING DEFENDANT'S BIOLOGICAL CHILDREN ON THE [SORO], THUS VIOLATING DEFENDANT'S CONSTITUTIONALLY PROTECTED PARENTAL RIGHTS.

LEGAL POINT 2

THE ASSISTANT PROSECUTOR FAILED TO SHOW EVIDENCE OF CORRESPONDENCE BETWEEN DEFENDANT'S BIOLOGICAL CHILDREN AND THE COURT.

LEGAL POINT 3

THE TRIAL COURT JUDGE ALSO FAILED TO SHOW EVIDENCE OF CORRESPONDENCE BETWEEN DEFENDANT'S BIOLOGICAL CHILDREN AND THE COURT.

LEGAL POINT 4

NEITHER THE TRIAL COURT JUDGE NOR THE PROSECUTOR CONTACTED THE VICTIMS IN THE CASE TO FIND THE RELATIONSHIP BETWEEN THEM AND THE BIOLOGICAL CHILDREN.

LEGAL POINT 5

THE TRIAL COURT JUDGE FAILED TO ASK FOR EVIDENCE OF DEFENDANT'S DRUG OR

8                                                          A-3372-21

ALCOHOL USAGE, CONDUCT OR TREATMENT RECORDS.

LEGAL POINT 6

THE WAY THAT FACTOR [SIX] READS WOULD REQUIRE EVIDENCE OF A SEPARATE CASE AND NOT THE CASE IN WHICH THE [SORO] IS FROM.

LEGAL POINT 7

THE TRIAL COURT JUDGE HAS FAILED TO OBTAIN THE MEDICAL RECORDS OF DEFENDANT.

LEGAL POINT 8

THE TRIAL COURT JUDGE FAILED TO PROVIDE COMMUNICATION BETWEEN THE COURT, THE VICTIMS[,] AND THE BIOLOGICAL CHILDREN.

II.

Nicole's Law permits the court to issue an order as a condition of bail or to continue a prior order or issue a new order upon conviction, prohibiting a defendant charged with or convicted of a sex offense from having any contact with a victim, including restraining the defendant from entering a victim's residence, place of employment, business or school, and from harassing or stalking the victim or victim's relatives. The law defines "sex offense" by referencing Megan's Law, N.J.S.A. 2C:7-2.

The PDVA is designed to assure victims of domestic violence "the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18. However, "[t]he Legislature did not intend that every final restraining order issued pursuant to the [PDVA] be forever etched in judicial stone." A.B. v. L.M., 289 N.J. Super. 125, 128 (App. Div. 1996). Accordingly, the PDVA expressly provides that a defendant may move to dissolve or modify an FRO upon a showing of "good cause." N.J.S.A. 2C:25-29(d). In determining if the applicant has shown good cause, the trial court should consider the non-exhaustive list of factors set forth in Carfagno. 288 N.J. Super. at 435; see also Sweeney v. Honachefsky, 313 N.J. Super. 443, 447-48 (App. Div. 1998).

"Generally, a court may dissolve an injunction where there is 'a change of circumstances [whereby] the continued enforcement of the injunctive process would be inequitable, oppressive, or unjust, or in contravention of the policy of the law.'" Carfagno, 288 N.J. Super. at 433-34 (alteration in original) (quoting Johnson & Johnson v. Weissbard, 11 N.J. 552, 555 (1953)). "Only where the movant demonstrates substantial changes in the circumstances that existed at the time of the final hearing should the court entertain the application for dismissal [of a domestic violence FRO]." Kanaszka v. Kunen, 313 N.J. Super. 600, 608 (App. Div. 1998).

A-3372-21

On appeal, defendant contends the motion judge erred in denying his motion to modify the JOC and SORO. In making her determination, the motion judge utilized the framework established in <u>Carfagno</u>. Before we can review the motion judge's ultimate ruling, we must consider whether it was appropriate to apply <u>Carfagno</u>—an analysis used to evaluate modifications to FRO's—to a requested modification for a SORO, entered as part of a sentence following a criminal conviction.

There are similarities between SOROs and domestic violence restraining orders. Enacted in 2007, Nicole's Law permits a victim of a sex offense to obtain a restraining order against the offender. <u>See</u> N.J.S.A. 2C:14-2 and 2C:44-8. Specifically, Nicole's Law states, in pertinent part:

> When a defendant is found guilty of a sex offense, the court may, at the time of sentencing and in addition to any other disposition authorized by law, order the continuation of a prior order or condition of bail that restricts the defendant's contact with the victim, or enter an order imposing such restrictions at the time of sentencing.
>
> In addition to restricting a defendant's contact with the victim, the court may enter an order:
>
> a. restraining the defendant from entering the residence, property, school, or place of employment of the victim or of other family or household members of the victim and requiring the defendant to stay away from any specified place that is named in the order and is frequented regularly by the victim or other family or household members;

11

b. restraining the defendant from making contact with the plaintiff or others, including an order forbidding the defendant from personally or through an agent initiating any communication likely to cause annoyance or alarm including, but not limited to, personal, written, or telephone contact with the victim or other family members, or their employers, employees, or fellow workers, or others with whom communication would be likely to cause annoyance or alarm to the victim;

. . . .

d. providing for any other appropriate restraints necessary to protect the victim.

[N.J.S.A. 2C:44-8.]

In essence, a SORO is intended to parallel a domestic violence restraining order "except that there need not be a domestic relationship between the defendant and the victim for a [SORO] to be entered if a defendant has been charged with or convicted of certain sex offenses." See Admin. Off. of the Cts., Admin. Directive #01-10, Nicole's Law (N.J.S.A. 2C:14-12 and N.J.S.A. 2C:44-8)—Restraining Order and Notification Procedures, at 1 (March 2, 2010).[3]

---

[3] Directives have the same efficacy as rules and orders. See In re P.L. 2001, Chapter 362, 186 N.J. 368, 381 (2006) (citing State v. J.M., 182 N.J. 402, 415-16 (2005)) ("The Supreme Court's administrative policies are pronounced through Court opinions, orders, rules, and directives."); J.M., 182 N.J. at 415-16 (quoting In re Yaccarino, 101 N.J. 342, 351 (1985)) ("The authority to

As the motion judge stated, "the overarching purpose of [Nicole's Law] is the protection of the victim, specifically from unwanted contact with or harassment from the perpetrator." In a similar vein, the PDVA was also designed to assure victims of domestic violence "the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18.

Here, the motion judge considered defendant's request to modify his JOC and amend the SORO under the Carfagno standard for modifying or lifting domestic violence restraining orders. We are satisfied the motion judge appropriately considered the similarities between the domestic violence restraining orders and properly applied the Carfagno factors to the facts before her in considering defendant's application.

However, as the motion judge indicated, she simply did not have enough information to adequately assess defendant's application and therefore, the motion to modify the SORO was properly denied. In light of defendant's recent release from prison, he may choose to renew his motions to modify the JOC and SORO based on his changed circumstances, providing the judge with pertinent information. If the State opposes the application, it must present

_____

promulgate rules that are set forth as the Rules of Court, 'may also be exercised in the form of general [D]irectives or specific orders.'").

appropriate certifications or testimony from A.M. and the children, not the hearsay statements it conveyed by letter. The judge will exercise his or her discretion whether the application can be decided on the submissions or if an evidential hearing is required.

We briefly consider and reject defendant's remaining arguments. We find no merit in defendant's contention that his constitutionally protected parental rights were violated by the SORO. Defendant's parental rights were not terminated with the imposition of the SORO. Moreover, Nicole's Law clearly provides that individuals—such as defendant's biological children—may be included on a SORO even if they are not victims.

Regarding defendant's evidential arguments—that the victims and biological children were not contacted by the motion judge or prosecutor, and the motion judge failed to obtain his treatment records—we reiterate that defendant failed to meet his prima facie burden of showing good cause existed for modification of the SORO. See G.M. v. C.V., 453 N.J. Super. 1, 12-13 (2018) (quoting Kanaszka, 313 N.J. Super. at 608). It is defendant's burden to demonstrate good cause. However, as stated, hearsay statements are not sufficient for the judge to consider the Carfagno factors.

As stated above, we conclude the motion judge appropriately considered the Carfagno factors in the context of an application to vacate an SORO and

14

ultimately found defendant failed to meet his prima facie burden because he did not provide the relevant information to fully analyze the factors. The motion judge noted there are "simply too many unanswered questions."

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15 A-3372-21