695 A.2d 730

J.N.S., PLAINTIFF–RESPONDENT, v. D.B.S.,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 7, 1997—Decided June 23, 1997.

Before Judges PRESSLER, HUMPHREYS and WECKER.

*Jacobowitz, Grabelle, Defino, McGoughran and Latimer, P.C.,* attorneys for appellant (*Timothy F. McGoughran,* on the brief).

*Skoloff & Wolfe, P.C.,* attorneys for respondent (*Beatrice Kandell,* on the brief).

The opinion of the court was delivered by

WECKER, J.S.C. (temporarily assigned).

This is an appeal from a final restraining order entered under *N.J.S.A.* 2C:25–17 *et seq.* and premised upon a finding that defendant husband committed acts of harassment in violation of *N.J.S.A.* 2C:33–4a. We are called upon to determine whether the trial judge's factual findings are supported by substantial credible evidence in the record, and if so, whether those facts support the legal conclusion that the elements of harassment have been proved sufficiently to establish domestic violence and to warrant the restraining order. We conclude that the trial judge was understandably concerned at the lack of judgment and self-restraint shown by a parent in the presence of young children, nevertheless we conclude that the defendant's conduct did not constitute domestic violence within the meaning of the Prevention of Domestic Violence Act. We therefore reverse.

On appeal, defendant contends that the conduct described in the domestic violence complaint "does not constitute harassment under *N.J.S.A.* 2C:33–4" because plaintiff's disputed allegations, even if true, are trivial and because there is insufficient

evidence that defendant acted with the required "intent to harass the plaintiff." Defendant cites *Murray v. Murray,* 267 *N.J.Super.* 406, 408, 631 *A.*2d 984 (App.Div.1993), and *D.C. v. T.H.,* 269 *N.J.Super.* 458, 635 *A.*2d 1002 (App.Div.1994) in support of his contentions. Defendant also contends that the trial judge "based his decision on facts that are not supported by adequate, substantial or credible evidence...." [1]

Not surprisingly, plaintiff argues in response that "the trial court properly found that the defendant's conduct taken in the aggregate constitutes domestic violence [and] defendant had intended to harass plaintiff."

Despite the vulgarities that both parties obviously exchanged on numerous occasions and the inappropriate behavior to which they exposed their young children, defendant's behavior cannot fairly be said to have violated the criminal code or to have evidenced a risk of escalating or future violence. We conclude as we did in *N.B. v. T.B.,* 297 *N.J.Super.* 35, 687 *A.*2d 766 (App.Div.1997), that such conduct as could be found by a preponderance of the evidence did not constitute domestic violence and the restraining order entered under the Act was unjustified. "[T]his matter fits more readily within the category of 'domestic contretemps' " than a "matter of consequence." *Id.* at 40–41, 687 *A.*2d 766, *quoting Corrente v. Corrente,* 281 *N.J.Super.* 243, 250, 657 *A.*2d 440 (App.Div.1995).

The undisputed facts are as follows. The parties married in January 1986 and separated in April 1995, when defendant agreed to move from the marital home. They had three young children, a son born in 1987 and two daughters born in 1991 and 1993. After the separation, the children remained in the marital home with their mother. Their father had very frequent overnight visitation with all three children. A divorce complaint was filed and pending

---

[1] While defendant's contention is also framed as "contrary to the weight of the evidence," that is a standard of review applicable only to a jury verdict. See *R.* 2:10–1.

when plaintiff filed this complaint on May 20, 1996. At that time, the children were approximately ages nine, five, and three. Custody was apparently a contested issue in the pending divorce action, along with support issues related to the defendant's substantial income as well as equitable distribution of the parties' assets valued at several million dollars.

Plaintiff's complaint alleged various conduct over a period from Friday through Monday, May 17–20, 1996. Plaintiff alleged that when defendant came to pick up their son, he harassed her by using a vulgar hand gesture; that when he brought the child back he kicked over a garbage can; and that he had "constantly harassed [her] in person and over the phone." With respect to prior history, plaintiff alleged that defendant had "threatened [her] life with his Mafia connections," threatened to take the children, and to "make [her] life miserable."

These allegations were disputed by defendant. Nevertheless, there was testimony at the final hearing from which the judge could have concluded that defendant used a "vulgar hand gesture"; that he "kicked over a garbage can," although defendant denied both claims and offered testimony of an eyewitness that he did not kick over the garbage can; that on Yom Kippur in September 1995 he used a derogatory slang term to describe plaintiff's non-Jewish boyfriend; and that in March 1996 he called plaintiff a variety of obscene names. It was only in the context of the 1995 Yom Kippur holiday, when plaintiff did not go to dinner at defendant's brother's house, that plaintiff testified to a single telephone threat:

You're going down. You're going down. I'm going to destroy you.

While those words sound threatening on their face, the context and history over the eight months between September and the May complaint make it impossible to conclude that those words violated *N.J.S.A.* 2C:33–4a. There was no evidence to support the alleged threat to plaintiff's life, or alleged "Mafia connections" of the defendant, and insufficient evidence from which to find "constant harassment" or a threat to make plaintiff's life miserable.

Plaintiff's only evidence of a "Mafia" connection was her testimony that at some unspecified time in the past, she met a friend of defendant's family at defendant's parents' house and defendant described the friend as "a lieutenant in the Mafia." Plaintiff further testified that defendant told her that her boyfriend had Mafia connections.

### The trial judge himself concluded:

I'm left in this unhappy position. I believe neither one. I believe neither the plaintiff or the defendant. I believe that the incidents as described did occur, to the extent that there was harassing, coarse language used by the defendant. I believe that there was a spitting in the past, whenever that date was.[2] I believe the parties, from their conduct in this courtroom, are capable of it.

I have expressed to counsel in chambers and I'll express it again that the conduct that they exhibit before and in front of the children is disgusting, deplorable, despicable and if it continues, I'm going to tell you what I tell other people in the same situation. That while Mr. Coplon may represent J.N.S. and Mr. McGoughran may represent D.B.S., I represent the children. And if it happens again, if I hear again any disgusting language or any untoward conduct in the presence of the children, at any time hereafter, at any time hereafter, I will personally take them into my custody.

That is not an idle threat. That is a promise. I am not going to let you two, blessed with all the advantages that any American could possible have, mess up the lives of these children. Not going to happen. So, take that home with you on your Friday night and pray on it, because it's not going to happen.

Based upon 2C:33–4, I find that the defendant did make and use offensively coarse language, did engage in alarming conduct. He did intend, in my judgment, to harass. Whether in fact that harassment was provoking, was provoked by prior events, I can't say. But I do know that I find that he intended to harass. I also find from the testimony that he did knock over the garbage can. Ms. Strasser was apparently in full view and nobody asked her or she didn't say anything about the garbage can, except that she didn't see it.

The conduct was alarming. The conduct was coarse and don't for a minute believe that I am only finding D.B.S. guilty of coarse conduct. He is the one who is the defendant. I find him guilty of coarse conduct. But I am absolutely finding as a matter of fact that J.N.S. is capable of and probably did engage in as coarse, if not coarser conduct.

I am going to issue the restraining order. And the defendant is prohibited from future acts of domestic violence and is barred from the following location, ... except as hereinafter set forth and is not to have any oral, written, personal, other form of contact with the plaintiff. And when I say no contact, I mean no contact.

---

[2] The plaintiff admitted spitting at the defendant.

I mean no bells, no whistles, no semaphore flags, no smoke signals, no nothing. Because the name of this act is the Prevention of Domestic Violence.

We normally defer to the trial judge with respect to findings of fact based upon the credibility of witnesses at a bench trial. *Rova Farms Resort, Inc. v. Investors Ins. Co. of America*, 65 *N.J.* 474, 483–84, 323 *A.*2d 495 (1974). Legal conclusions, however, are reviewed *de novo*. *Manalapan Realty v. Township Comm.*, 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995). At most, the trial judge could have found the following conduct by the defendant: On Friday night, May 17, when defendant came to the house to pick up the children for their overnight visit, he parked in the driveway. Plaintiff was delayed by her own estimate for five to seven minutes, because defendant's car blocked hers in the garage. Plaintiff called the police but called them off when defendant pulled out. On Saturday morning, May 18, defendant was scheduled to bring the girls home at 8:00 a.m., but did not return until 11:45 a.m. On Sunday when defendant came to pick up their son for another game, plaintiff met defendant at the door with a tape recorder. He said nothing, but gave her "the finger" and then called their son to see his mother with the tape recorder. At unspecified past dates since the separation defendant called plaintiff obscene names. Defendant said offensive things of an ethnic and sexual nature about plaintiff's new boyfriend, on one occasion in front of their son; plaintiff admitted having insulted defendant about the size of his penis. On Sunday, May 19, when defendant brought their son home from a baseball practice, he kicked over a garbage can. On nine occasions, plaintiff called the municipal police department, once in October 1995, once in March and once in April 1996, and six times between May 15 and May 20, 1996, when this complaint was filed. She never alleged anything more serious than the conduct described above.

In response to leading questions at the hearing, plaintiff testified to being "terrified" by defendant. However, the evidence does not support any reasonable basis for such a reaction. The judge did find that defendant made and used

offensively coarse language, did engage in alarming conduct. He did intend, in my judgment, to harass.

In the context of the judge's findings, quoted at greater length above, we cannot conclude as a matter of law that defendant committed an act of domestic violence. There is insufficient credible evidence that defendant intended to "alarm," but only that the parties mutually annoyed each other. *Compare State v. J.T.*, 294 *N.J.Super.* 540, 683 *A.*2d 1166 (App.Div.1996).

We are constrained to find defendant's actions no more serious than conduct we have previously found not to be harassment. *See Peranio v. Peranio*, 280 *N.J.Super.* 47, 654 *A.*2d 495 (App.Div. 1995) ("I'll bury you."); *Corrente v. Corrente* 281 *N.J.Super.* 243, 657 *A.*2d 440 (App.Div.1995) (arguments, threats and turning off the telephone). We cannot express our view any more clearly than did Judge Long in *Peranio v. Peranio, supra*, 280 *N.J.Super.* at 56–57, 654 *A.*2d 495.

Although it can safely be observed that defendant's conduct was no model, application of the domestic violence law to it trivialized the plight of true victims of domestic violence and misused the legislative vehicle which was developed to protect them. It also had a secondary negative effect: the potential for unfair advantage to a matrimonial litigant. As we said in *Murray v. Murray* 267 *N.J.Super.* 406, 410, 631 *A.*2d 984 (App.Div.1993):

We are concerned, too, with the serious policy implications of permitting allegations of this nature to be branded as domestic violence and used by either spouse to secure rulings on critical issues such as support, exclusion from marital residence and property disposition, particularly when aware that a matrimonial action is pending or about to begin.

.... Our hope is that all children of divorce can be spared arguments and recriminations. But this needs to come from the good intentions of their parents and not from the misapplication of the domestic violence law, which law was intended to address matters of consequence, not ordinary domestic contretemps such as this.

We recognize the sincere concern of this trial judge for the parties' future safety and security, and the difficult task facing each judge who must rule on domestic violence complaints, never knowing with certainty which persons, among the many each day who swear out complaints seeking protection from alleged domestic violence, are actually at risk. Nevertheless, we must not shy away from our obligation to interpret the harassment statute

sensibly, consistent with the legislative purpose behind laws against domestic violence. Without countenancing any form of physical or emotional abuse, we perceive the necessity to distinguish the bickering between these parties from prohibited acts of domestic violence.

■ We too are concerned, as was the trial judge, about the welfare of the parties' three children. Nevertheless, neither the harassment statute nor the Prevention of Domestic Violence Act were intended to place trial judges in the role of super monitors over modern-day parenting. In our view, plaintiff's repeated and petty complaints to the local police department evidence a lack of perspective and sense of proportion that led to the filing of this complaint and that are consistent with the judge's own conclusion that he believed "neither the plaintiff nor the defendant."

It must be understood that our decision today does not in any way condone the offensive and inappropriate behavior of either party. Our point is to reassert the importance of the Prevention of Domestic Violence Act by denying its application to trivial and petty communications between separated spouses who appear to be misusing that Act. *See, e.g., Corrente, supra; Peranio v. Peranio,* 280 *N.J.Super.* 47, 654 *A.*2d 495 (App.Div.1995).

The ongoing disputes between the parties should have been referred to the Family Part judge to whom the pending divorce was assigned. See *N.B. v. T.B., supra,* 297 *N.J.Super.* at 42, 687 *A.*2d 766. That judge would have the authority to take effective action to protect the children from harmful, offensive conduct in their presence. The parties' disputes over custody, visitation, support, and assets were already before the court in their matrimonial litigation.

Reversed and remanded to the Family Part for review of the visitation schedule and arrangements to the extent they were affected by the restraining order we reverse today. We do not retain jurisdiction.