# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2511-21

E.S.N.,[1]

    Plaintiff-Respondent,

v.

L.R.B.,

    Defendant-Appellant.

_____

        Submitted November 29, 2023 – Decided December 13, 2023

        Before Judges Firko and Susswein.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FV-08-1017-22.

        Tonacchio, Spina & Compitello, attorneys for appellant (Stephen R. Cappetta, on the brief).

        Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the privacy of the parties and the confidentiality of these proceedings. R. 1:38-3(d)(10).

Defendant L.R.B. appeals from a March 17, 2022 final restraining order (FRO) entered in favor of his former live-in paramour, plaintiff E.S.N., pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, based on the predicate act of assault, N.J.S.A. 2C:12-1(a). On appeal, defendant contends there is insufficient evidence supporting the judge's finding he committed the predicate act of assault, and the judge erred by concluding an FRO is necessary to protect plaintiff from future acts of domestic violence. We disagree and affirm.

I.

The parties began dating in May 2021 and resided together. On February 13, 2022, which was Super Bowl Sunday, plaintiff alleged in her initial domestic violence complaint that she was emptying her bag, which contained defendant's clothing. He stated, "that's my f****** bag," grabbed plaintiff's left hand or wrist, and pulled her away from the bag. Plaintiff alleged defendant threatened to shut off her phone line if she attempted to contact the police about the

incident. In her initial complaint, plaintiff also alleged there was a prior history of domestic violence between the parties.[2]

At the ensuing trial, which commenced on February 24, 2022, both parties were self-represented. Plaintiff testified the parties resided together for eight months. Plaintiff explained she has post-traumatic stress disorder (PTSD) and is under the care of a psychologist and a psychiatrist. She testified she has congestive heart failure requiring medications. She also takes medications for other unspecified conditions.

Plaintiff testified that on the day of the incident, February 13, 2022, after defendant kept her up all night, she wanted a cup of coffee, but defendant poured a cup for himself "out of spite" instead, leaving none for her. According to plaintiff, defendant had been drinking brandy. She went to sleep on the floor. As plaintiff proceeded to make herself a cup of coffee, she testified defendant "start[ed] with his mouth again," and after she told him to stop or else she would call the police, he "punched" her on the side of her face. Plaintiff testified that after punching her, defendant stated, "now you have a f****** reason to call the police." She testified that after falling down backwards over a space heater, she

---

[2] Docket No. FV-08-0646. The prior complaint mentioned in plaintiff's initial domestic violence complaint is not contained in the appendix. The judge indicated the prior complaint was dismissed by plaintiff.

ran into the bathroom, became "frozen," and called 9-1-1. The punch to the face incident is not referenced in the initial complaint. Defendant did not object to plaintiff's testimony regarding the assault at trial.

Plaintiff testified that when the police arrived, they "demanded" she come out of the bathroom. Plaintiff claimed an officer "got in her face" and advised her that a temporary restraining order (TRO) was being issued against defendant. Plaintiff testified that defendant "assaulted [her] one time before." Plaintiff testified defendant was "joking" and "laughing" with the officers. She then testified she chose to decline a TRO because the officers convinced her not to put defendant outside of the home in the "weather out there." Five minutes later, plaintiff testified she changed her mind, spoke to the 9-1-1 dispatcher again, and requested a TRO, which was ultimately granted.

Plaintiff testified she went to the emergency room at Voorhees Virtual Hospital on the day of the assault—February 13, 2022—and provided a copy of her medical record to the judge. Plaintiff testified she sustained "contusions to [her] jaw and lip" as a result of the assault. The judge admitted the medical record into evidence without objection from defendant. The judge questioned plaintiff as to why she told the physician at the emergency room that she had been "punched in the face" but did not mention that defendant struck her in her

4

TRO application.  Plaintiff responded that the police officers were "intimidating" her, "scared" her, and "did not help [her]."  Defendant was then given the opportunity to cross-examine plaintiff but declined to do so.

Plaintiff presented B.G. as a fact witness.  He resides in the same apartment building as the parties.  B.G. testified that defendant "bangs on the walls, bangs on the doors for hours, from [five] in the morning," defendant has "caused lots of problems with the neighborhood," and "had the cops come multiple times."  B.G. testified that defendant "harasses [plaintiff] while the cops are there," and the "arresting officers . . . weren't doing anything about it" and "just told [him] to go f*** himself two times."

B.G. testified he did not witness defendant hit plaintiff, but saw "bruises on her face," a "cut on her nose," and "scrapes on her arm" on the day of the incident.  B.G. stated on prior occasions that he observed plaintiff with "black eyes."  B.G., who apparently was on the scene when the officers arrived, testified they did not photograph plaintiff's injuries on the date of the incident.  Defendant cross-examined B.G. about the wall banging at 5:00 a.m.  B.G. responded he lives "two doors down" from the parties, and the banging is "really loud" and "wakes him up."

Plaintiff also presented V.R. as a fact witness. V.R. is B.G.'s girlfriend. V.R. also testified defendant was banging on the door two days before the incident occurred—"like a Friday." V.R. testified that on the day of the incident, there was an "altercation" with defendant, and the "cops were there." V.R. testified that she and B.G. took plaintiff to the emergency room on the day of the incident and on another unspecified occasion.

The record shows the judge observed plaintiff nodding off during V.R.'s testimony. The judge interrupted and asked plaintiff if she was sleeping in the courtroom during the proceedings. Plaintiff answered she had a "bad" concussion, was "sick," and medication prescribed by her doctor made her "sleepy," but she was "clear-minded" enough to proceed. The judge nonetheless adjourned the proceedings at that point because he was concerned about plaintiff's ability to focus and coherently proceed with her case. Defendant waived cross-examination of V.R., and the matter was adjourned until March 17, 2022.

The next day, on February 25, 2022, plaintiff amended her complaint to include allegations that she had testified to but that were not in the initial complaint. In her amended complaint, plaintiff alleged the parties argued on February 13, 2022, defendant was drunk, and that he kept her up all night.

A-2511-21

Plaintiff also included in her amended complaint that on February 13, 2022, defendant punched the left side of her face causing her to fall backwards over a space heater and hit her head on the kitchen floor. Plaintiff also alleged in the amended complaint she told defendant she was calling the police, and he responded, "now you have a f****** reason to call." Plaintiff further alleged in the amended complaint that she got up, ran into the bathroom, locked the door, and called 9-1-1. She claimed the inside of her mouth was bleeding where she bit her tongue when defendant struck her.

After the police arrived, plaintiff went to the emergency room at Virtua Voorhees Hospital where she was evaluated, underwent two CT scans, and was diagnosed with post-concussion syndrome. Plaintiff alleged she needs surgery as a result of the injury inflicted by defendant—cervical radiculopathy—and she has developed heart palpitations because of resulting trauma from the incident. The amended complaint alleged the predicate acts of assault and harassment, and that defendant committed a prior act of domestic violence against plaintiff.

On March 17, 2022, when the trial resumed, plaintiff testified she was diagnosed with post-concussion syndrome, which causes her to "nod" out. Plaintiff stated she "need[s] to feel protected" and take care of herself physically.

7

Plaintiff added she suffers from "memory loss" and unbearable headaches. Defendant waived cross-examination, and plaintiff rested her case.

Defendant testified the parties resided together for about three years. He stated plaintiff has PTSD, and he "went through a lot about that with her." Defendant testified the "reason" plaintiff is in court is "because she just wanted to commandeer [his] residence." He testified plaintiff had a "problem" with "some guys . . . harassing her" or [she] needed some money." Defendant claimed plaintiff needed a place to stay, he was living alone, and he told plaintiff that she could come live with him. He claimed he felt "sorry" for plaintiff because she had multiple health issues and had been on hospice care. Defendant wanted plaintiff to watch his residence while he was working nights. Defendant testified the parties eventually became an "item."

Defendant asserted plaintiff has a "Dr. Jekyll and Mr. Hyde" personality. According to defendant, plaintiff "went off the deep end about a cup of coffee" on the day of this incident. He stated he "never put [his] hands" on plaintiff and "she has swung at [him]."

The judge asked defendant to review plaintiff's February 13, 2022 medical record and explain the reference to her diagnosis of "contusion" to the face and history of "trauma, patient was punched in the face." Defendant testified he "did

8

not touch her," he "did not punch her," and the officers "checked her over and there was nothing wrong with her." Defendant testified he did not accompany plaintiff to the emergency room. Defendant stated the officers saw "no blood" coming from plaintiff's mouth as she had claimed, and she was having one of her "PTSD moment[s]." Defendant testified that whatever happened to plaintiff "was not because of [him,]" and there was "nothing wrong with her" when the police "escorted him out of the house."

Following the completion of testimony, the judge issued an oral decision. The judge found jurisdiction was established under the PDVA because the parties had a dating relationship and had resided together. The judge determined that defendant had committed the predicate act of assault but not the predicate act of harassment. In his thoughtful decision, the judge questioned plaintiff's credibility because "her thoughts were jumbled," she seemed "confused" when she testified, and she was sometimes "unresponsive" when the judge tried to "redirect" her.

The judge was unpersuaded by plaintiff's filing of an amended complaint after the first day of the hearing to include a "narrative of being punched in the face" and that she had gone to the emergency room. The judge did not find plaintiff's correction of the deficiency in the original TRO to be a "compelling

9

reason to believe her story." And the judge emphasized defendant "adamantly" denied he struck plaintiff.

Relying instead on the admitted medical record, the judge highlighted that plaintiff "stated to someone at the emergency department that she had been punched in the face." The judge went on to explain that based upon plaintiff's statement, the hospital practitioners performed a CT scan of plaintiff's head, brain, and facial bones, "looking for things that would have been consistent with being struck in the face . . . [b]ecause that's what [plaintiff] came in saying happened to her." The judge concluded the reasonable inference to be drawn from the medical record was plaintiff was credible about what she told hospital staff, and defendant punched her in the face on February 13, 2022, notwithstanding the fact that plaintiff neglected to tell the judge who issued the TRO "about being punched in the face at all."

The judge noted neither party called the investigating officers as witnesses to corroborate their respective version of events. The judge stated plaintiff's fact witnesses—B.G. and V.R.—did not witness the February 13, 2022 incident, but B.G. credibly testified he saw "bruises" on plaintiff's face and a "cut on her nose" that day. Based upon the "sufficient corroboration of plaintiff's version of events," the judge concluded she met her burden of proving by a preponderance

10

of the evidence that defendant assaulted her. The judge found plaintiff required protection from defendant because she appeared "almost like a wounded animal in the courtroom" at the beginning of the hearing "when she was in the same room near . . . defendant" and needs to be "free of the threat of further physical violence" requiring issuance of an FRO. This appeal followed.

## II.

In a domestic violence case, we accord substantial deference to the family judge's findings, which "are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Deference is especially appropriate when much of the evidence is testimonial and implicates credibility determinations. Cesare, 154 N.J. at 412. We do not disturb the judge's factual findings and legal conclusions unless we are "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Rova Farms, 65 N.J. at 484). However, we review de novo "the trial judge's legal conclusions and the application of those conclusions to the facts." Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)(citing

Manalapan Realty, L.P. v. Twp. of Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

When determining whether to grant an FRO pursuant to the PDVA, the trial judge must make two determinations. Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). The first Silver prong is "whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125.

Upon finding the commission of a predicate act, the judge must then address the second Silver prong—whether an FRO is necessary to protect the plaintiff from future acts or threats of violence. Id. at 126. In other words, the judge must find that "relief is necessary to prevent further abuse." J.D. v. M.D.F., 207 N.J. 458, 476 (2011) (quoting N.J.S.A. 2C:25-29(b)); see also Silver, 387 N.J. Super. at 127 (explaining the judge must find that an FRO is necessary to protect "the victim from an immediate danger or to prevent further abuse").

The second prong, like the first, "must be evaluated in light of the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment and physical abuse," as well as "whether immediate danger to the person or property is present." Silver, 387 N.J. at 124 (quoting

12

Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995) (citing N.J.S.A. 2C:25-29(a)(1)-(2))).

Applying these principles, we conclude there is no basis to disturb the judge's factual findings or legal conclusions. He had the opportunity to hear and consider the testimony of the parties, plaintiff's witnesses B.R. and V.R., and plaintiff's medical record. The judge had the opportunity to assess the parties' and witness's credibility based on believability and demeanor. His factual findings are supported by substantial credible evidence, and those facts were correctly applied to the law. Defendant points to no evidence in the record that undermines the judge's findings.

The judge determined that plaintiff proved the predicate act of simple assault, N.J.S.A. 2C:12-1(a), which provides:

> A person is guilty of assault if the person:
>
> (1) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or
>
> (2) Negligently causes bodily injury to another with a deadly weapon; or
>
> (3) Attempts by physical menace to put another in fear of imminent serious bodily injury.

The judge found plaintiff testified and amended her complaint to state defendant "punched" her in the face on the day of the incident and went to the hospital that day for evaluation and treatment. Thus, the judge determined plaintiff did not "fabricate [] a story about having been punched in the face by someone" in a hospital emergency room and undergo CT scanning "to create an emergency room record upon which she could eventually rely upon at trial." In his decision, the judge underscored the fact that plaintiff "forgot to tell" the judge who issued the TRO about being "punched in the face," but the emergency room record and the credible testimony of B.G., who saw "bruises and a cut contemporaneous with the events alleged to have been a punch on that same date," and who "was there and saw the aftermath," established the incident occurred. The judge found there was "sufficient corroboration of plaintiff's version of events" to find she met her burden of proof to establish defendant committed the predicate act of assault. We discern no error in the judge's factual findings or statutory interpretation on this issue.

"Bodily injury is defined as 'physical pain, illness or any impairment of physical condition.'" State ex rel. S.B., 333 N.J. Super. 236, 242 (2000) (quoting N.J.S.A. 2C:11-1(a)). "Not much is required to show bodily injury. For example, the stinging sensation caused by a slap is adequate to support an

14                                                                      A-2511-21

assault." State v. Stull, 403 N.J. Super. 501, 505 (App. Div. 2008) (quoting N.B. v. T.B., 297 N.J. Super. 35, 43 (App. Div. 1997)). "[P]hysical discomfort, or a sensation caused by a kick during a physical confrontation, as well as pain, as that word is commonly understood, is sufficient to constitute bodily injury for purposes of a prosecution for a simple assault." S.B., 333 N.J. Super. at 244. Defendant's punching of plaintiff in the face is a bodily injury for purposes of assault.

A plaintiff need establish only a single predicate act. Cesare, 154 N.J. at 402. Therefore, we need not address defendant's arguments or analyze the judge's dismissal of the harassment claim under N.J.S.A. 2C:33-4. The judge's analysis satisfactorily addresses the first inquiry under Silver.

The second inquiry is whether the judge should enter a restraining order that provides protection for the victim. Silver, 387 N.J. Super. at 127. "Although this second determination . . . is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." Ibid.

The factors which the court should consider include, but are not limited to:

(1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;

(2) The existence of immediate danger to person or property;

(3) The financial circumstances of the plaintiff and defendant;

(4) The best interests of the victim and any child;

(5) In determining custody and parenting time the protection of the victim's safety; and

(6) The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a).]

The judge evaluated defendant's conduct "in light of the previous history of violence between the parties. Silver, 387 N.J. Super. at 125-26 (quoting Peranio v. Peranio, 280 N.J. State 47, 54 (App. Div. 1995)). The judge noted plaintiff previously filed a TRO against defendant, but later dismissed it. The initial TRO complaint and the amended TRO complaint alleged a prior history of domestic violence. Plaintiff testified defendant assaulted her in the past, and he did not rebut her testimony on this issue. The judge found plaintiff was punched in the face, had a cut on her nose, and required treatment at an emergency room. These findings are sufficiently supported in the record.

16

Defendant claims he no longer resides with plaintiff and wishes to have no future interactions with her, militating against the need for an FRO under the second Silver prong. But the judge explicitly found plaintiff was physically harmed by plaintiff and emphasized her "subjective" fear of him when she saw him in the courtroom. Here, the judge correctly determined defendant's egregious act of assaulting plaintiff and her requiring treatment at an emergency room and multiple CT scans supported the issuance of an FRO. In sum, plaintiff presented sufficient credible evidence to support both Silver prongs, and under the totality of the circumstances, we see no evidentiary errors, oversight, or abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2511-21