# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0973-24
A-1122-24

S.M.T.,[1]

     Plaintiff-Appellant,

v.

S.A.,

     Defendant-Respondent.

_____

S.A.,

     Plaintiff-Appellant,

v.

S.M.T.,

     Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
> **February 10, 2026**
> **APPELLATE DIVISION**

Argued December 10, 2025 – Decided February 10, 2026

Before Judges Currier,[2] Berdote Byrne, and Jablonski.

---

[1] We use initials to preserve the confidentiality of domestic violence records, R. 1:38-3(d)(9), and protect the confidentiality of domestic violence victims, R. 1:38-3(d)(10).

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket Nos. FV-04-2749-24 and FV-04-2792-24.

Matheu D. Nunn argued the cause for appellant in A-0973-24 and respondent in A-1122-24 (Einhorn Barbarito Frost Botwinick Nunn & Musmanno, PC, attorneys; Matthew D. Nunn and Jessie M. Mills, on the briefs).

Julie R. Burick argued the cause for respondent in A-0973-24 and appellant in A-1122-2 (Adinolfi, Roberto, Burick & Molotsky PA, attorneys; Thomas A. Roberto and Julie R. Burick, on the briefs).

The opinion of the court was delivered by

BERDOTE BYRNE, J.A.D.

The parties appeal from their respective denials of final restraining orders (FROs) against each other, which we consolidate for the purpose of issuing a single opinion. S.M.T. alleged a series of incidents of physical abuse, forced sexual acts, and coercive control during the parties' marriage, culminating in an altercation on May 31, 2024. Although the trial court concluded S.A. committed the predicate act of simple assault and recognized a prior incident of simple assault by S.A. against S.M.T., it did not make specific findings with respect to the sexual assault allegations or coercive control, and

_____

[2] Judge Currier was added to the panel after oral argument with the consent of all counsel.

2

ultimately denied S.M.T. an FRO. The court reasoned the proven incidents of physical assault amounted to "marital contretemps" for which an FRO was not necessary to protect S.M.T. from future harm because any risk could be handled in the existing family dissolution matter. We disagree and conclude S.M.T. demonstrated the need for an FRO because she proved simple assault, sexual assault, and coercive control, and established the likelihood of a risk of continued domestic violence. A pending dissolution matter is not the appropriate forum to address future risk of domestic violence, unless the parties have mutually agreed to civil restraints. We reverse the trial court's order and remand for the entry of an FRO in favor of S.M.T. against S.A., consistent with this opinion.

However, we find no reason to disturb the trial court's determination that S.A. failed to prove S.M.T. committed a predicate act of domestic violence and affirm the denial of an FRO in his favor.

I.

S.M.T. and S.A. were married in Egypt in 2008 and subsequently at a civil ceremony in the United States in 2009. The parties have two children together, now fourteen and fifteen years old.

On May 31, 2024, an incident occurred at the marital residence. S.M.T. testified she was in the guest room, where she had been sleeping for

3

approximately six months, preparing for bed, when S.A. entered the room, got into the bed, and refused to leave after she asked him to do so. S.M.T. stated she left the room and, upon returning, "pulled out the blanket" in an effort to get S.A. to leave. She testified he then "grabbed the pillow and smashed it in [her] face really hard with his full force." S.M.T. described the pillow as "a hard pillow [used] for neck problems." She stated she "was in a lot of pain in [her] face and [her] neck" after the incident.

S.M.T. obtained a temporary restraining order (TRO) on June 1, 2024. In addition to the incident on May 31, S.M.T. alleged in her TRO application that there was a prior "assault where both parties had visible signs of injury."

On June 1, 2024, S.A. contacted law enforcement to report S.M.T. had taken $70,000[3] from a box in his closet, and to file criminal charges against her for theft. S.M.T. later admitted to taking $30,000 to pay family health insurance costs and taxes. S.M.T. testified she paid approximately $21,000 in taxes with the funds after S.A. directed her to "settle our balances." S.A. denied telling plaintiff to pay the taxes.

---

[3] The exact amount is disputed. S.A. asserts it was $70,000, while S.M.T. maintains it was $30,000. The trial judge stated: "[T]he [c]ourt can't know whether there was [$]30,000 or $70,000 in the box, but perhaps those issues can be fleshed out in the FM case."

A-0973-24

S.A. was granted a TRO against S.M.T. on June 6, 2024. In addition to setting forth his version of the incident on May 31, 2024, and S.M.T.'s alleged taking of funds from S.A.'s closet, S.A.'s TRO referenced an earlier incident in which S.M.T. allegedly became aggressive during physical intimacy, bit S.A.'s lip, and inserted her fingers in his anus. Additionally, in describing any prior history of domestic violence, S.A. alleged S.M.T. scratched his nose, and slapped his laptop and a cup of coffee from his hands.

On June 25 and again on June 26, 2024, S.M.T. amended her TRO to add further allegations of prior acts of domestic violence and harassment. She alleged S.A. became verbally abusive on March 13, 2024, over an orthodontist reimbursement, followed her from room to room, prevented her from sleeping by turning on lights and the television, spilled water on her, and physically confronted her by grabbing her arms and throwing her onto the floor. She alleged the children were home at the time and one of them called the police.

S.M.T. introduced photographs of bruising from the March 13 incident, which she attributed to that physical altercation, and testified S.A. caused those injuries. S.A. reported a scratch to his face, supported by a photograph and his testimony. S.M.T. amended her TRO a third time on July 1, 2024, explaining she was staying at a friend's house and was "afraid to go home due to abuse."

A-0973-24

The TROs were consolidated, and hearings were held over several days. S.M.T. testified S.A. forced her to participate in sexual acts during the marriage:

> Q. Okay. What else, if anything, occurred physically with the defendant?
>
> A. Then he would grab my arms if . . . he doesn't like a conversation and . . . get in my face and he would just be aggressive, even in our sexual intercourse.
>
> Q. What does that mean?
>
> A. He would . . . force sexual intercourse and he would use the religion as I'm the wife and I should obey whenever he wants. And one time he had a penis extender that he wore and I asked him not to put it in my vagina, but then he did it anyways and he wouldn't stop until I started crying.
>
> And he would also like get sex cards and ask me to do what's on the sex cards. And when I say no, [he would] say that I'm boring and he would force it.
>
> Q. Did you ask him to stop?
>
> A. Yes.
>
> . . . .
>
> Q. Okay. What if anything else would occur sexually?
>
> A. He would also put his finger in my anus and I begged him not to do so. He would pull my hair and I asked him to stop. And a few days before the May 31, he pulled my hair and I asked him to stop like three times and he wouldn't.

6

S.A. denied forcing S.M.T. to do anything sexually.

S.M.T. further testified she sought to take the children to Egypt during their Christmas break to visit her father, who was ill with cancer, but S.A. refused and instead took the children to Saudi Arabia after briefly bringing them to Egypt for the funeral. She also testified he tried to stop her from traveling to see her sister three years earlier when her sister had cancer. S.M.T. also alleged S.A. engaged in controlling behaviors, including placing hidden cameras in the marital residence, controlling access to the home by changing the lock codes, opening her packages, cutting off her phone line, removing access to Wi-Fi, and restricting the children's access to S.M.T. by taking their electronics. S.A. acknowledged purchasing cameras for the home, but testified they were installed outside the residence only and were used for child supervision. S.A. denied cutting off the Wi-Fi or S.M.T.'s phone access, and stated he never prevented the children from speaking with her.

The trial court issued an oral opinion. Regarding the allegations of the May 31, 2024 incident that formed the predicate act of the first-issued TRO, the court found S.M.T.'s account in which she described being struck by S.A. with a pillow to be credible and supported by the evidence. The court rejected S.A.'s account of the incident, finding his testimony not credible. The court found: "I'm satisfied [this] supports the predicate act of simple assault[;] that

A-0973-24

by smashing or mashing the pillow into the wife's head and face, . . . he recklessly caused her a bodily injury." Furthermore, the court found the incident on March 13, 2024, was a prior act of simple assault S.A. committed upon his wife. Notwithstanding, the court denied S.M.T. an FRO stating:

> [A]fter a thorough review of the second prong of [Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006)], I do not find that a final restraining order is necessary to protect [S.M.T.] going forward. The issues that she's concerned about and the issues of present and past domestic violence will be addressed, I think, with some regulation concerning custody, parenting times.
>
> [Emphasis added.]

The trial court also noted:

> [T]he advantage that the parties are seeking, particularly the wife is, and the other forum is, of course, the FM action. She had made a decision to divorce the husband. That comes with a lot of very difficult issues: who stays, who goes, who pays, who doesn't. And the fear that the [c]ourt has and that the Supreme Court in . . . [J.D. v. M.D.F., 207 N.J. 458 (2011)] has is that the domestic violence will all come to be used to seek an advantage.

The court found the majority of S.M.T.'s allegations of physical abuse, sexual abuse, and coercive control amounted to "marital contretemps" that did not merit a restraining order.

The court also denied S.A.'s FRO, specifically finding no predicate act had occurred and his allegations were only "a reaction to the wife's [TRO]." These appeals followed.[4]

## II.

"Our review of an FRO is generally limited." T.B. v. I.W., 479 N.J. Super. 404, 412 (App. Div. 2024). "We accord substantial deference to the Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" Ibid. (quoting J.D., 207 N.J. at 482); see also S.K. v. J.H., 426 N.J. Super. 230, 238 (App. Div. 2012). Consequently, findings by a court "are binding on appeal when supported by adequate, substantial, credible evidence." T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).

However, we do not accord such deference to the trial court's legal conclusions, which we review de novo. C.C. v. J.A.H., 463 N.J. Super. 419,

---

[4] Prior to oral argument, we received correspondence from S.M.T.'s counsel informing the court that S.M.T. had obtained an FRO against S.A. for a subsequent incident unrelated to this appeal. S.M.T.'s counsel took the position this appeal was not rendered moot because S.A. is believed to be out of the country and has not been served with the FRO. We agree the appeal was not rendered moot by the entry of a subsequent FRO.

428-29 (App. Div. 2020). Questions of law "are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles." R.G. v. R.G., 449 N.J. Super. 208, 218 (App. Div. 2017) (quoting N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 434 (App. Div. 2002)) (internal quotation marks omitted); see also H.E.S. v. J.C.S., 175 N.J. 309, 329-31 (2003) (remanding to the trial court because it failed to "consider the totality of the circumstances surrounding the complaint"); D.M.R. v. M.K.G., 467 N.J. Super. 308, 324-25 (App. Div. 2021) (reversing the trial court's entry of an FRO due to lack of findings, no prior history of domestic abuse existing between the parties, and plaintiff's lack of fear).

When determining whether to issue an FRO pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, the Family Part is required to make two distinct determinations. Silver, 387 N.J. Super. at 125-27. First, the trial court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. Second, if the court finds a predicate act has occurred, "the judge must determine whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence." D.M.R., 467 N.J. at 322.

Simple assault is among the predicate acts enumerated in the PDVA. Pursuant to N.J.S.A. 2C:12-1(1), "[a] person is guilty of assault if the person: [a]ttempts to cause or purposely, knowingly or recklessly causes bodily injury to another."  "Bodily injury is defined as 'physical pain, illness or any impairment of physical condition.'" N.B. v. T.B., 297 N.J. Super. 35, 43 (App. Div. 1997) (quoting N.J.S.A. 2C:11-1(a)).  To establish bodily injury, "[n]ot much is required." Ibid.  In N.B., we held a "stinging sensation caused by a slap is adequate to support an assault" and "'[e]ven the slightest physical contact, if done intentionally, is considered a simple assault under New Jersey law.'"  Ibid. (quoting New Jersey v. Bazin, 912 F. Supp. 106, 115 (D.N.J. 1995)).  We agree that S.A.'s actions during the May 31, 2024 incident constitute simple assault, as did S.A.'s actions on March 13, 2024.

When the predicate act involves physical force and violence, "the risk of harm is so great that the inquiry [regarding the secondary analysis of Silver] can be perfunctory." J.D., 207 N.J. at 488.  In these cases, "the decision to issue an FRO 'is most often . . . self-evident.'" A.M.C. v. P.B., 447 N.J. Super. 402, 417 (App. Div. 2016) (quoting Silver, 387 N.J. at 127).  In A.M.C., the trial court denied the plaintiff an FRO despite concluding that her "husband . . . physically assaulted her on two separate occasions over a three-week period." 447 N.J. Super. at 405, 417-18.  We reversed, concluding there was a history

11                                                                    A-0973-24

of domestic abuse and an immediate danger to the plaintiff.  Id. at 418 (citing N.J.S.A. 2C:25-29(a)(1) to (2)).  Indeed, it would be rare for proven physical assault to be deemed mere marital contretemps, and we found no reported decision where marital contretemps was relied upon as a basis for denying a restraining order where physical assault was a proven predicate act.  Thus, the court's reliance on J.D., where the predicate act at issue was harassment, was misplaced in this matter where it found physical assault had occurred on at least two occasions.

In A.M.C. we clarified courts may consider two key factors when determining whether to issue an FRO pursuant to the second prong of Silver: "(1) a lack of evidence demonstrating a history of domestic violence or abuse; and (2) the commission of a predicate act that does not involve physical violence against the victim."  Id. at 414.  Similar to A.M.C., the record before us reflects a history of physical assault to S.M.T. and circumstances demonstrating an FRO is necessary to prevent future risk of domestic violence.

The predicate acts enumerated in the PDVA also include sexual assault. N.J.S.A. 2C:25-19(a)(7).  N.J.S.A. 2C:14-2(c) provides that "[a]n actor is guilty of sexual assault if the actor commits an act of sexual penetration with another person . . . using coercion or without the victim's affirmative and freely given permission, but the victim does not sustain severe personal

12

injury." If the plaintiff proves by a preponderance of the evidence that a sexual assault occurred, the first prong of <u>Silver</u> has been met. <u>See</u> <u>T.B.</u>, 479 N.J. at 412 (quoting <u>Silver</u>, 387 N.J. Super. at 125); <u>S.D. v. M.J.R.</u>, 415 N.J. Super. 417, 438-42 (App. Div. 2010) (reversing and remanding for the entry of an FRO based on multiple predicate acts of domestic violence, including sexual assault).

Regarding S.M.T.'s allegations of sexual assault, the court stated:

> [S.M.T.] complains that the husband got sex cards, as I note from the photograph sort of what looks to be a deck of playing cards, but apparently with sexual positions on each card. And she alleged that that was domestic violence, that he wanted her to engage in sex as depicted on the card. But it wasn't certain whether she did or not, but I think ultimately, her testimony was that she refused to, and certainly that's her right.
>
> She complains that the defendant was very aggressive with sex, that the defendant would force her to have sex to the point where she was crying. He forced an object into her vagina; I guess the contention was that the husband had a penis extender that he wanted to utilize in the course of sex with the wife. Allegations that he would shove his finger into her anus when she begged him not to, that he bit her when she told him not to. There were really no specific dates as to those contentions of prior acts of domestic violence.
>
> . . . .
>
> <u>A lot of the testimony the [c]ourt heard related to simple marital contretemps. There were, again, the</u>

A-0973-24

> sex card, the penis extender, the intentions of maybe deviant sex. . . .

[Emphasis added.]

The court failed to make specific findings as to the allegations of non-consensual sex or whether a sexual assault had occurred. See Big Smoke LLC v. Twp. of W. Milford, 478 N.J. Super. 203, 227-28 (App. Div. 2024) ("A trial court's failure to clearly state all conclusions of fact and law . . . 'constitutes a disservice to the litigants, the attorneys and the appellate court.'" (quoting Curtis v. Finneran, 83 N.J. 563, 569-70 (1980))). The court's statement: "I think ultimately her testimony was that she refused to [engage in the acts depicted]" is belied by the record. This was not S.M.T.'s testimony; she stated when she would say no, S.A. "would force it."

Our law is clear; sexual assault may occur between two people who are married. See N.J.S.A. 2C:14-5(b) ("No actor shall be presumed to be incapable of committing [sexual assault] because of . . . marriage to the victim."); see also State v. Smith, 85 N.J. 193, 210 (1981) (discussing "the inequities of a medieval rule that denies some women protection against sexual attack and treats them as sexual property of their husbands"). A domestic violence victim's marital status is irrelevant as to whether the alleged victim consented to a sexual act. S.M.T., whom the court found credible, proved she was a victim of sexual assault by a preponderance of the evidence. Therefore,

14

S.M.T. met the first prong of <u>Silver</u>. Instead, the court stated: "It's clear from the contentions that it's somehow recognized by [S.M.T.] that [S.A.] feels he has a right to exert certain authority over her, and again, the [c]ourt doesn't pretend to understand the actual tenets of the faith or culture in that regard." Tenets of faith and culture are not relevant as to whether acts of physical or sexual assault occurred.

And, because the trial court failed to make specific findings of fact and conclusions of law regarding the predicate act of sexual assault, the court did not consider it when applying the second prong of <u>Silver</u>.

In determining whether an FRO should issue during the secondary analysis of <u>Silver</u>, "the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29a(1) to -29a(6) [now (7)], to protect the victim from an immediate danger or to prevent further abuse." <u>Silver</u>, 387 N.J. Super. at 127.

The secondary analysis of <u>Silver</u> requires an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to (7):

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;

(3) The financial circumstances of the plaintiff and defendant;

(4) The best interests of the victim and any child;

(5) In determining custody and parenting time the protection of the victim's safety;

(6) The existence of a verifiable order of protection from another jurisdiction; and

(7) Any pattern of coercive control against a person that in purpose or effect unreasonably interferes with, threatens, or exploits a person's liberty, freedom, bodily integrity, or human rights with the court specifically considering evidence of the need for protection from immediate danger or the prevention of further abuse.

Effective January 8, 2024, the PDVA was amended to include coercive control among the statutory factors courts must consider when determining whether to issue an FRO. N.J.S.A. 2C:25-29(a)(7). Coercive control is not among the predicate acts enumerated in the PDVA; rather, it is analyzed pursuant to the secondary analysis of Silver once a predicate act of domestic violence has been proven.

Our courts have long recognized controlling behavior as a dangerous form of domestic violence that threatens the safety of those subjected to it. See Cesare, 154 N.J. at 397 (describing domestic violence "as a 'pattern of abusive and controlling behavior injurious to its victims'" (emphasis added) (quoting Peranio v. Peranio, 280 N.J. Super. 47, 52 (App. Div. 1995))). In

New Jersey Division of Youth & Family Services v. I.H.C., we noted the testimony of an expert in domestic violence, who described coercive control as a:

> malevolent course of conduct directed toward a social partner in order to dominate that partner using strategies of physical abuse, isolation from support systems, intimidation involving threats, degradation involving emotional abuse, confinement [and] can also include surveillance, and restrictions on the ability to move freely and act independently and make autonomous decisions.
>
> [415 N.J. Super. 551, 564 (App. Div. 2010).]

The Legislature's recent amendment of the PDVA to include coercive control of a secondary analysis factor in determining whether an FRO should issue reflects a renewed intent to prevent this type of domestic violence. The amendment provides coercive control may include, but shall not be limited to:

> (a) isolating the person from friends, relatives, transportation, medical care, or other source of support;
>
> (b) depriving the person of basic necessities;
>
> (c) monitoring the person's movements, communications, daily behavior, finances, economic resources, or access to services;
>
> (d) compelling the person by force, threat, or intimidation, including, but not limited to, threats based on actual or suspected immigration status;

(e) threatening to make or making baseless reports to the police, courts, the Division of Child Protection and Permanency (DCPP) within the Department of Children and Families, the Board of Social Services, Immigration and Customs Enforcement (ICE), or other parties;

(f) threatening to harm or kill the individual's relative or pet;

(g) threatening to deny or interfere with an individual's custody or parenting time, other than through enforcement of a valid custody arrangement or court order pursuant to current law including, but not limited to, an order issued pursuant to Title 9 of the Revised Statutes; or

(h) any other factors or circumstances that the court deems relevant or material.

[N.J.S.A. 2C:25-29(a)(7).]

"If the court finds that one or more factors of coercive control are more or less relevant than others, the court shall make specific written findings of fact and conclusions of law on the reasons why the court reached that conclusion." Ibid.

The trial court failed to make findings regarding the allegations of coercive control in its analysis of prong two. S.M.T. detailed S.A.'s acts of coercive control in limiting her travel, controlling the family's finances and her access to money, surveillance by various electronic means, and depriving her of sleep using lights, television noise, and spilling water on her. This

18

testimony supports a finding that S.A.'s acts of coercive control required issuance of an FRO.

With respect to the denial of S.A.'s FRO, he contends the trial court erred in finding he failed to establish a predicate act of domestic violence, asserting he proved harassment beyond a preponderance of the evidence. He further argues the trial court failed to make findings as to S.M.T.'s purpose during the May 31, 2024 incident, asserting she had the intent to "harass, annoy, and bother" him.

S.A.'s arguments are unavailing because the record contains no evidence S.M.T. acted with the purpose to harass him. The record instead reflects uncontroverted evidence her purpose was to have S.A. leave the room in which she had been sleeping alone for the preceding six months. See N.B., 297 N.J. Super. at 41 (holding that a husband who went into his wife's bedroom for a legitimate purpose is not guilty of harassment even though he was told by her not to enter). Furthermore, the trial court found S.A.'s testimony regarding the May 31, 2024 incident not credible and that he sought a restraining order in retaliation for S.M.T. having obtained one. We therefore find no reason to disturb the trial court's determination that S.A. failed to prove S.M.T. committed a predicate act of domestic violence. S.A. further argues the trial court failed to properly address the secondary analysis of Silver. Because we

19

A-0973-24

determine the court did not err in finding S.A. failed to prove a predicate act, we need not address the second prong of <u>Silver</u>.

Reversed in part, affirmed in part, and remanded for entry of a final restraining order in favor of S.M.T. against S.A. The Amended TRO dated July 1, 2024 is reinstated effective immediately until replaced with the FRO. We affirm the court's denial of an FRO to S.A. against S.M.T. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0973-24