# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5559-17T2

A. M.,

     Plaintiff-Respondent,

v.

M. P.,

     Defendant-Appellant.

_____

     Argued March 20, 2019 – Decided April 15, 2019

     Before Judges Nugent and Reisner.

     On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FV-13-1286-18.

     Kenneth W. Biedzynski argued the cause for appellant (Goldzweig, Green, Eiger & Biedzynski, LLC, attorneys; Kenneth W. Biedzynski, of counsel and on the brief).

     A. M., respondent, argued the cause pro se.

PER CURIAM

Defendant M.P. appeals from a June 25, 2018 amended final restraining order (FRO) under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, in favor of plaintiff A.M. The judge concluded that defendant's conduct, which consisted of sending plaintiff a series of vulgar and insulting text messages, constituted harassment. See L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 532 (App. Div. 2011). However, the judge did not make the factual findings required by Silver v. Silver, 387 N.J. Super. 112, 126-27 (App. Div. 2006). Therefore, we remand this case to the trial judge for reconsideration and additional factual findings. Due to the amount of time that has elapsed since the FRO hearing, the trial judge may, in his discretion, choose to hear additional testimony from the parties before making the additional findings on remand. We leave the FRO in place pending the proceedings on remand.

The parties were never married to each other, although they dated for several years and lived together for a period of time. They have two children, who now live with plaintiff but visit defendant on the weekends. On April 29, 2018, plaintiff filed a domestic violence (DV) complaint, asserting that plaintiff was "having issues" with defendant concerning "their son[']s football team and tax situation" and an argument about these matters "escalated" to the point that defendant became "verbally abusive." For reasons not explained on this record,

the court entered a temporary restraining order (TRO) that prohibited defendant from having contact with the couple's two children, although there were no allegations of any threats to, or abuse of, the children.

The following summary is drawn from the record of the FRO hearing. Both parties' appendices contain copies of the text message exchanges in question, although in defendant's appendix only his messages are legible. In substance, the parties' communications focused on their disagreements over their tax returns and their seven-year-old son's participation in a youth football league. However, they differed greatly in their tone and content. Defendant's text messages can fairly be described as angry, racist, sexist, obscene, demeaning, and immature. Among the litany of abuse, he called plaintiff a "n****r," a "c*nt, and a "b*tch." In two of the messages, he stated that he hoped plaintiff would drop dead. In another text, he told plaintiff not to attend their son's football game and said he would drag their son off the football field if plaintiff showed up to watch the game. He also ranted about his view that he was paying too much child support.

Plaintiff's responses were restrained in tone and tended to focus on the substance of what the parties were discussing, such as the son's football games. Some of plaintiff's text messages reproached defendant for throwing verbal

3

temper tantrums when he did not get his own way. However, she did not tell him to stop sending her text messages or tell him to stop using foul language. Neither party's communications threatened any physical harm to the other. The closest thing to a threat was defendant's statement that he would drag the son off the football field if plaintiff attended the game.

In her testimony, plaintiff tried to put the text message exchange in context. She described defendant's alleged prior acts of domestic violence which occurred while the couple were still living together, including physical acts such as punching walls and throwing things. She testified that defendant took steroids and would experience episodes of senseless rage. With respect to defendant's current conduct, plaintiff told the judge that she was tired of receiving defendant's abusive text messages when she was at work, because they were upsetting and a distraction. She was also tired of defendant's unreasonable ranting and raving about which football program their seven-year-old son was going to participate in. However, plaintiff was also concerned that defendant had not seen the children in two months because the TRO restrained defendant from seeing the children.

In his testimony, defendant asserted that plaintiff manipulated him into leasing a car for her, in exchange for her promise to let the son play in the

football league defendant thought was a better fit for the son.  Defendant became angry when plaintiff then signed the son up for a different league.  According to defendant, he responded to this deception by telling plaintiff that he wanted her to return to him the assorted football equipment he had bought for his son.  Defendant testified that he was also angry because plaintiff claimed the children as a deduction on her tax returns for the second year in a row.  He explained that he resented the fact that he paid child support but, in his view, plaintiff excluded him from decisions about the children that he felt were important.

In her summation, plaintiff stated that defendant had threatened to get her fired from her job, something that was neither mentioned in her complaint nor the subject of any testimony.  She also described her past struggles to get out from under what she perceived as defendant's "control."  She described the stress she felt at never knowing when defendant would become upset and send her hostile text messages about what she thought were trivial matters.

After referring to the findings Silver generally requires, the trial judge made only very brief factual findings concerning this case.  He found that defendant's text messages contained offensively coarse language.  He found that although many people occasionally use foul language in text messages, defendant's text messages "clearly went over the top" and were sent "with a

5

A-5559-17T2

purpose to harass." The judge also found that because defendant sent increasingly offensive text messages over a period of several days, "a restraining order is necessary." The judge did not find that plaintiff was in fear of defendant. Nor did he make any findings concerning prior alleged harassment, threats, or acts of domestic violence, although there was testimony about some of those acts.

In issuing the FRO, the judge deleted the TRO's prohibition against defendant having contact with the children. He prohibited defendant from communicating with plaintiff, but then amended that provision to permit defendant to send plaintiff email messages about the children on a limited basis.

In his appeal, defendant contends that, although the text messages contained offensive language, they did not rise to the level of harassment or domestic violence, and did not constitute "a predicate act which would warrant the issuance of a final restraining order." He also asserts that the trial court "failed to find that an FRO was necessary to protect plaintiff." Plaintiff urges that we affirm the FRO. She contends that the content and "extent" of the text messages rose to the level of harassment, and defendant will continue to harass her unless a FRO is in place.

A-5559-17T2

In reviewing the issuance of the FRO on appeal, we must defer to the trial judge's factual findings if supported by substantial credible evidence, and we owe particular deference to the judge's expertise and his evaluation of witness credibility. Cesare v. Cesare, 154 N.J. 394, 412-13 (1998). However, we review legal conclusions de novo. J.N.S. v. D.B.S., 302 N.J. Super. 525, 530 (App. Div. 1997). In the absence of sufficient factual findings, we cannot defer to a trial court's legal conclusions about whether domestic violence has occurred. See Silver, 387 N.J. Super. at 128.

In Silver, we addressed the findings that a trial court must make before deciding whether to issue a FRO. After discussing the distinction between an incident of domestic violence, and the sort of domestic interpersonal conflict that would not rise to the level of domestic violence, we stated:

> [W]hen determining whether a restraining order should be issued based on an act of assault or, for that matter, any of the predicate acts, the court must consider the evidence in light of whether there is a previous history of domestic violence, and whether there exists immediate danger to person or property.
>
> . . . .
>
> The second inquiry, upon a finding of the commission of a predicate act of domestic violence, is whether the court should enter a restraining order that provides protection for the victim. . . . [T]he Legislature did not intend that the commission of one of the enumerated

7

> predicate acts of domestic violence automatically mandates the entry of a domestic violence restraining order.
>
> [Silver, 387 N.J. Super. at 126-27 (citation omitted).]

In deciding whether a FRO is necessary, the court should consider the six factors set forth in the PDVA, N.J.S.A. 2C:25-29(a)(1) to (6).[1] Silver, 387 N.J. Super. at 127. In Silver, we left the restraints in place, but remanded the case to the trial court to make further findings concerning "the second step in the analysis" – including considering and making "specific findings on the previous history of domestic violence, if any," between the parties and how that history affected the issue of whether issuance of a FRO was warranted. Id. at 128.

As our courts have repeatedly cautioned, "[v]ulgar name-calling alone is not domestic violence." R.G. v. R.G., 449 N.J. Super. 208, 226 (App. Div. 2017). A court must find that vulgar language – or, as here, a series of vulgar text messages – was directed at the victim with an intent to harass. See L.M.F.,

---

[1] The six factors are: "(1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse; (2) The existence of immediate danger to person or property; (3) The financial circumstances of the plaintiff and defendant; (4) The best interests of the victim and any child; (5) In determining custody and parenting time the protection of the victim's safety; and (6) The existence of a verifiable order of protection from another jurisdiction." N.J.S.A. 2C:25-29(A)(1) to (6).

412 N.J. Super. at 535-36. The court must support such a finding with citations to evidence. As the Supreme Court has held:

> Although a purpose to harass can be inferred from a history between the parties, that finding must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient. The victim's subjective reaction alone will not suffice; there must be evidence of the improper purpose.
>
> [J.D. v. M.D.F., 207 N.J. 458, 487 (2011) (citations omitted).]

Issuing a FRO based only on offensive text messages or the like generally requires factual findings about the context in which the communications were made. See R.G., 449 N.J. Super. at 227. The history of domestic violence, if any, between the parties can be important. See L.M.F., 421 N.J. Super. at 536-37. "A history of domestic violence may serve to give content to otherwise ambiguous behavior and support entry of a restraining order." J.D., 207 N.J. at 483. In this case, plaintiff testified about the history of the parties' relationship, including defendant's alleged history of threatening, controlling or violent behavior, which could put his current conduct in context. But the judge made no findings about any of that testimony. His finding that defendant's language became increasingly foul over time did not, by itself, justify his conclusion that it was necessary to issue a FRO for plaintiff's protection.

9

Because the trial judge made insufficient factual findings, we are constrained to remand this case for reconsideration and further factual findings in accordance with this opinion. As previously noted, the trial court may, but is not required to, hear further testimony from the parties concerning their current circumstances in light of the time that has elapsed since the FRO was entered.

Remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5559-17T2