# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1093-23

J.K.,

    Plaintiff-Appellant,

v.

S.E.K.,

    Defendant-Respondent.

_____

Submitted September 24, 2024 – Decided October 4, 2024

Before Judges Gilson and Augostini.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-0441-24.

Faegre Drinker Biddle & Reath, LLP, attorneys for appellant (Matthew A. Fontana, on the briefs).

S.E.K., respondent pro se.

PER CURIAM

Plaintiff J.K.[1] appeals from a November 2, 2023 order dismissing his domestic violence complaint and dissolving a temporary restraining order (TRO) issued under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.  We affirm.

I.

J.K. and S.E.K. were married and have three children, who, at the time of the final restraining order (FRO) trial, were ages 16, 14 and 9.  The parties had been married fourteen years before separating in 2018.  Since 2019, they have been engaged in acrimonious divorce proceedings.  In approximately October 2020,[2] in Gloucester County where the parties' matrimonial case is pending, defendant obtained an FRO against plaintiff.

We discern the facts from the testimony of the parties during trial on November 2, 2023.  Plaintiff filed a domestic violence complaint against defendant on August 2, 2023, alleging predicate acts of harassment and cyber-

---

[1] We use initials and pseudonyms to protect the parties' privacy and preserve the confidentiality of the proceedings.  R. 1:38-3(d)(9) to (10).

[2] At the outset of the hearing on this matter, the trial judge stated that the parties' original TRO was granted to defendant on October 11, 2020, and a FRO was entered on January 21, 2022.  However, it appears that the FRO was amended in 2022.  The record does not reflect the exact date the FRO was originally granted.

harassment. Plaintiff amended the complaint three times; adding allegations that defendant violated the TRO.[3]

In the complaint, plaintiff asserted defendant used her FRO as a "sword" and not a "shield" by repeatedly and falsely accusing plaintiff of violating the FRO. The complaint also alleged plaintiff had been arrested seven times because of defendant's false claims. Plaintiff further asserted defendant used the parenting app to call plaintiff derogatory names and threaten to have him arrested. After the TRO was issued, plaintiff contended that defendant violated it by threatening plaintiff by text to have him arrested.

During trial, plaintiff testified that the incident leading to the filing of his complaint occurred when he received body camera footage from the police department "showing [defendant] going to them, trying to have me arrested." The criminal charges plaintiff filed accused defendant of theft for retaining money she received upon returning a pair of the child's sneakers purchased by plaintiff. He believed defendant contacted the police to have him arrested after being advised of and in retaliation for those criminal charges. According to plaintiff, defendant reported to the police that plaintiff had violated the FRO by

---

[3] Even though plaintiff's amended complaint alleged violations of the TRO, the amended complaint did not reflect contempt of a domestic violence order as a predicate act.

A-1093-23

sending flowers to her home and calling and texting her. As a result of defendant's allegations, plaintiff was arrested.

Plaintiff further testified defendant had repeatedly accused him of violating the FRO, resulting in his arrest twenty-six times. Most of the charges, he acknowledged, were dismissed. Plaintiff did not produce corroborating evidence, however, of these arrests. He argued that these false claims caused him to lose his security clearance, which ultimately resulted in his loss of employment. He acknowledged on cross-examination that his job suspension occurred back in 2020.

Regarding their children, plaintiff explained that the parties are permitted to communicate only through the parenting app "AppClose."[4] On two occasions, one occurring while the TRO was in effect, defendant communicated with him over the app calling him names, berating him and threatening to have him arrested.

Another incident occurred during one of the children's medical appointments in Delaware, where both parties were at the appointment and defendant threatened to call the police on plaintiff for showing up at the doctor's

---

[4] Various communications between the parties via AppClose were admitted into evidence during the trial. We have not been provided with these exhibits. However, we note that neither party is challenging the harassment finding.

A-1093-23

office. Plaintiff asserted that he was permitted to attend medical appointments for the children and give input pursuant to one of the court's orders. Plaintiff further asserted that the child's doctor had proposed a plan to permit both parties to attend the appointment and minimize any unauthorized contact.

Plaintiff testified regarding another dispute on September 5, 2023, involving medical insurance for the children. During their communication captured on the app, defendant threatened to call the Division of Child Protection and Permanency because plaintiff was "interfering with the health of [their] child."

In addition to the FRO defendant obtained against plaintiff, the TRO referenced approximately fourteen prior domestic violence complaints between the parties. Plaintiff testified regarding prior incidents of domestic violence throughout the parties' relationship, mainly arising from parenting disputes. For example, plaintiff testified regarding an incident prior to September 2022, when plaintiff went to one of the children's schools to pick up his ticket to attend an upcoming school concert. Upon arriving at the school, plaintiff learned that defendant had picked up both parents' tickets and refused to give plaintiff his ticket.

A-1093-23

After the TRO had been issued, plaintiff testified that defendant violated it by sending him a letter from the custody evaluator in their matrimonial case through the parenting app instead of communicating directly with his attorney and by accessing his personal social media accounts. Plaintiff alleged that defendant was intentionally causing him financial hardship. Plaintiff explained that defendant's direct communication with the custody evaluator, and not through counsel as the expert had requested, had cost him additional attorney's fees.

Defendant disputed many of the facts asserted by plaintiff. She testified that she has had an FRO against plaintiff since 2020, which prohibited parenting time with the children. Since the entry of the FRO, the parties' communication has been limited to issues pertaining to the children and insurance matters only. Defendant denied berating plaintiff during those limited communications.

Defendant testified that plaintiff was not permitted to attend the children's medical appointments. She acknowledged calling the FBI when plaintiff showed up at one of the children's medical appointments in Wilmington, Delaware. In response to the judge's question as to why, defendant explained plaintiff showed up in the lobby of the medical appointment and "trie[d] to come in with us."

6

Defendant denied falsely accusing plaintiff of violating the FRO. She testified that she has filed only three complaints against defendant for violating the FRO, two of which were pending.

Regarding the flowers sent to plaintiff's home, she acknowledged the flowers were addressed to the parties' daughter. She stated, however, that plaintiff should not have sent anything to her home because of the active FRO.

Defendant maintained that she did not violate the TRO. She testified she only communicated with plaintiff about the children since the issuance of the TRO, and none of her communications were harassing.

At the close of the case, the judge began by recognizing the complexities of this situation. There is an active FRO and pending divorce proceeding in another county, all while the parties are attempting to communicate regarding their children, the healthcare of the children, and insurance challenges. The judge noted that the parenting issues were complicated and have progressed from complex to "out-and-out extremely difficult."

The judge found the totality of the circumstances more akin to "domestic contretemps;" nonetheless, he found the predicate act of harassment had been proven. The judge concluded, however, that the second prong of Silver[5],

---

[5] Silver v. Silver, 387 N.J. Super. 112, 127 (App. Div. 2006).

whether there was a need for an FRO, had not been proven.  Thus, the judge denied plaintiff's request for the issuance of an FRO.   This appeal followed.

Plaintiff contends the judge erred in concluding that an FRO was not necessary to prevent further abuse.  He asserts the judge improperly considered the potential confusion that dual restraining orders may cause and misapplied the law given the parties' extensive history of ongoing harassment.

## II.

Findings by a trial court are generally binding on appeal, provided they are "supported by adequate, substantial, credible evidence."  Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)); see also Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).  We defer to a trial court's findings unless those findings appear "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."  Cesare, 154 N.J. at 412 (quoting Rova Farms, 65 N.J. at 484).

An appellate court owes a trial court's findings deference especially "when the evidence is largely testimonial and involves questions of credibility."  Ibid. (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Further, we "accord particular deference to the Family Part because of its 'special

jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 412). However, we review legal issues de novo. Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017).

The purpose of the PDVA is to "assure the victims of domestic violence the maximum protection from abuse the law can provide." G.M. v. C.V., 453 N.J. Super. 1, 12 (App. Div. 2018) (quoting State v. Brown, 394 N.J. Super. 492, 504 (App. Div. 2007)); see also N.J.S.A. 2C:25-18. Consequently, "[o]ur law is particularly solicitous of victims of domestic violence," J.D. v. M.D.F., 207 N.J. 458, 473 (2011) (alteration in original) (quoting State v. Hoffman, 149 N.J. 564, 584 (1997)), and courts "liberally construe[] [the PDVA] to achieve its salutary purposes," Cesare, 154 N.J. at 400.

When considering whether the entry of an FRO is appropriate, a trial court must first "determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). If a trial court finds a defendant has committed a predicate act of domestic violence, it next must determine if a restraining order is needed for the victim's protection. Id. at 126. "[T]he guiding standard is whether a restraining

order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127. Those factors include but are not limited to: "[t]he existence of immediate danger to person or property"; and "the best interests of the victim and any child." N.J.S.A. 2C:25-29(a)(2), (4). However, the need for an FRO can be justified based on "one sufficiently egregious action." Cesare, 154 N.J. at 402.

Here, the judge found defendant committed the predicate act of harassment. This finding is not challenged on appeal. Therefore, the sole question before us is whether the judge erred by finding there was no need for an FRO. Having carefully reviewed the record and the applicable law, we conclude that the trial court's decision on prong two is supported by the competent, relevant, and credible evidence.

The finding of a predicate act of domestic violence does not end the court's inquiry as to whether a final restraining should issue. Silver, 387 N.J. Super. at 123. "It is clear that the Legislature did not intend that the commission of any one of these acts [contained in N.J.S.A. 2C:25-19a] automatically mandates the issuance of a domestic violence order." Id. (quoting Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995)).

A-1093-23

When conducting the second prong of the Silver analysis, courts examine the record in light of the N.J.S.A. 2C:25-29(a) factors and evaluate the conduct in the context of the totality of the parties' relationship. In this case, we are mindful of our cautionary words in Peranio v. Peranio, 280 N.J. Super. 47, 56 (1995), "that the dissolution of a marriage is rarely a happy event. All parties suffer and even the most rational are hard pressed to avoid any emotional encounters."

Here, the court recognized that many of the incidents between the parties arose from parenting disagreements and amounted to "domestic contretemps" rather than "matters of consequence." J.N.S. v. D.B.S., 302 N.J. Super. 525, 527 (App. Div. 1997) (citing N.B. v. T.B., 297 N.J. Super. 35, 40-41 (App. Div. 1997)) (quoting Corrente, 281 N.J. Super. at 250) (internal quotation marks omitted). As the judge aptly noted, these parties "have problems with respect to insurance, a serious need for treatment and evaluations of the children, and a custody parenting problem, and it's horrif[ying] that there's no clear solution at this juncture." The judge acknowledged the contentious history between the parties but ultimately rejected plaintiff's assertion that the history between the parties necessitated a cross-final restraining order. After evaluating the totality of the parties' relationship, he found that plaintiff failed to establish how an FRO

11

was necessary to prevent further abuse in this context. Those findings are supported by substantial, credible evidence.

As the judge correctly observed, such domestic situations are complex. "Despite their decision to terminate their marriage, . . . the parties' relationship as parents will never end." L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 534 (App. Div. 2011). In the context of the parties' relationship, we are satisfied the judge did not err in finding that plaintiff had not proven by the credible evidence that an FRO was necessary to prevent further abuse.

To the extent we have not addressed any of plaintiff's remaining issues, we are satisfied they are without sufficient merit to warrant a discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1093-23